Robert L. Fidler, Petitioner *v.* Workmen's Compensation Appeal Board (United Cable Corporation), Respondent.

Submitted on briefs December 8, 1983, to Judges WILLIAMS, JR., BARRY and BARBIERI, sitting as a panel of three.

*Edward F. Silva,* with him, *Kim R. Plouffe, Feinberg & Silva,* for petitioner.

*Frank L. Tamulonis, Jr., Zimmerman, Lieberman & Derenzo,* for respondent, United Cable Corporation.

OPINION BY JUDGE BARBIERI, June 11, 1984:

Robert L. Fidler (Claimant), appeals from a decision of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision disallowing compensation for the permanent loss of Claimant's left eye under Section 306(c)(7) of The Pennsylvania Workmen's Compensation Act (Act)[1] and granting credit against possible future compensation payments for certain amounts recovered in a third-party action.

On October 31, 1974, Claimant suffered a compensable injury to his left eye for which compensation was paid during certain disability periods. In this proceeding, he seeks compensation for loss of use of his left eye and, by a separate petition, the employer, United Cable Corporation, petitioned to establish credit against possible future compensation payments for amounts recovered by Claimant in a third-party action. The issues presented to the compensation authorities were (1) whether Claimant has lost the use of his left eye for all practical intents and purposes, (2) whether the employer's insurance carrier's agreement to accept $3,000.00 at the time of the third-party settlement in satisfaction of its subrogation rights to reimbursement for the then total of its payments to Claimant of $9,976.92 should act as a satisfaction of all subrogation rights of the carrier for future as well as those past compensation payments, and (3)

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §513. The decision in this case must be made under the provisions of Section 306 as they existed prior to their amendment in December of 1974. The injury here was sustained on October 31, 1974. The 1974 version of this Section granted absolute immunity to the employer for its negligently inflicted injuries to its employe. *Tsarnas v. Jones & Laughlin Steel Corp.*, 488 Pa. 513, 412 A.2d 1094 (1980). The 1974 amendment is substantive, not procedural, and, therefore, will not be applied retroactively. *Bell v. Koppers Co., Inc.*, 481 Pa. 454, 392 A.2d 1380 (1978).

whether the referee erred as a matter of law in ruling out evidence of negligence on the part of the employer as against Claimant's contention that such negligence would bar subrogation out of the third-party fund. The referee, affirmed by the Board, found that Claimant had not suffered the loss of use of the injured eye; that the $3,000.00 paid over to the carrier at the time of the third-party settlement was on account, and not in satisfaction of, or waiver of, subrogation rights or credits against future compensation, if any; and that full credit must be given the employer and its carrier for payments received by Claimant from the third-party settlement over and above the amount $9,976.92. We will reverse in part, affirm in part and remand.

Addressing first the extent of loss of vision issue on which Claimant had the burden of proof, we note that where the party with the burden of proof, the Claimant in this issue, has not prevailed below, and the Board has affirmed, our review is limited to determining whether constitutional rights were violated, an error of law was committed, or there has been a capricious disregard of competent evidence. *Killian v. Workmen's Compensation Appeal Board*, 62 Pa. Commonwealth Ct. 29, 434 A.2d 906 (1981). Also, in determining whether or not an award should be entered under Section 306(c)(7) of the Act for loss or loss of use of an eye, the standard for determining whether an award should be entered for such loss where the eye has been injured, but not totally destroyed or removed, is as follows:

The ultimate test, finally arrived at, after much travail, is that of whether the injured eye was lost for all practical intents and purposes, not whether claimant in fact has vision in the injured eye. If so, compensation follows. In facilitation of the application of the ultimate

test, a further standard has been adopted: Compensation may not be had if, using both eyes, the claimant *can see better, in general,* than by using the uninjured eye alone; or, as otherwise stated, if the use of the injured eye *does not contribute materially* to the claimant's vision in conjunction with the use of the normal eye. (Emphasis added, citations omitted.) *Hershey Estates v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 470, 473, 308 A.2d 637, 639 (1973); *Armco Steel Corp. v. Workmen's Compensation Appeal Board (Magnone),* 68 Pa. Commonwealth Ct. 118, 448 A.2d 673 (1982).

Our examination of the record in this case reveals that the only competent testimony on the loss of vision issue is that of Dr. Alfred Charles Lucier, Board certified as a specialist in treating diseases and surgery of the retina in the field of opthalmology, who was also the attending and operating surgeon in this case.[2] His testimony provides no evidentiary support, opinion or otherwise, for findings by the referee that Claimant has failed to establish the loss of use of his left eye for all practical intents and purposes.

Two findings in the referee's decision which we believe are crucial here are:

12. That claimant when using the left-injured eye, in conjunction with the right eye, his vision is better, in general, than when using his uninjured eye alone.

13. That the claimant realizes material benefit when utilizing his injured left eye in conjunction with his uninjured right eye, as opposed to utilizing his right eye alone. (Emphasis added.)

---

[2] Defendant's examining physician was not called to testify. His deposition testimony was excluded on defendant's objection when offered by Claimant.

Actually, the testimony establishes that Claimant is a "monocular person," defined as a person "having but one eye." Dorland's Illustrated Medical Dictionary, Twenty Fourth Edition, 1965.

The injury suffered was from the perforation of the eye by a copper wire causing a detachment and redetachment of the retina for which surgery was performed immediately following the injury and then again in 1978, resulting in no direct vision, and leaving only a small amount of peripheral vision, with maximum vision on the Snellen chart recorded as 5 over 400 (5/400) achieved as pinhole vision. Dr. Lucier testified that with the "loss of all central vision" and a capacity only to count fingers at 5/400, Claimant has "lost the functional use of that eye," retaining only the limited peripheral vision, which provides depth perception in some things, but not in everything, and that the injured eye adds only "slightly" to Claimant's vision in conjunction with his uninjured right eye. Specifically, Dr. Lucier testified as follows:

Q. Now when using the left eye, or injured eye, in conjunction with the right eye, is his vision better than using his uninjured eye alone?

A. Slightly, yes.

Since we find it impossible to read "slightly" as "materially," and since the record in this case is devoid of any support for the assertion in Finding of of Fact No. 12 that Claimant's vision is better "in general" when using the injured eye in conjunction with the uninjured one, we must conclude that these key findings are in capricious disregard of the competent evidence. Accordingly, we must hold that the referee's conclusion that on the record in this case Claimant failed to prove the loss of use of his left eye for all practical intents and purposes is clearly

incorrect. We will accordingly direct that an award be entered in favor of Claimant for loss of use of his left eye.

Claimant's second contention, that the employer and its insurance carrier, Pennsylvania Manufacturers' Association Insurance Company (PMA), have waived, or otherwise agreed to surrender, the subrogation rights as to future liabilities to Claimant for workmen's compensation payments, is clearly without merit. The referee's pertinent findings on this issue are as follows:

17. That defendant insurance carrier, agreed to accept $3,000.00 in settlement of its subrogation rights with respect to compensation paid to the claimant to date of October 1976, inclusive, in the amount of $9,976.92.

21. That settlement of $3,000.00, pertains only to compensation paid to the claimant to date of October 19, 1976, inclusive, in the amount of $9,976.92, and has no effect on any future compensation benefits, which may be due to the claimant.

In support of these findings there is the testimony of former counsel for the insurance carrier, and also statements in an exchange of letters between Claimant's and insurer's counsel which we believe clearly support the referee's findings and negate Claimant's contention. Claimant's counsel's letter, addressed to counsel for the insurance carrier under date of June 9, 1977, contains the following statement:

This is to confirm the settlement of the above matter. The plaintiff will receive a check from Bob Gobbin's carrier in the amount of $47,500.00. The check will have your client's name listed on it. Your client, of that amount, will receive $3,000.00 as a compromise for the $10,000.00 which is already paid. This settle-

ment is to have no effect on his future benefits.

In response, on July 29, 1977, counsel for the insurance carrier wrote:

It is my understanding that you will receive the Defendant's draft in settlement of the above matter in the near future. As you know, PMA has compromised its lien (compensation paid to date) and will accept a net return of $3,000.00. Kindly forward the draft to my attention for proper endorsement by a representative of PMA. PMA's compromise of its lien pertains only to compensation paid to date and this compromise of past compensation has no effect on any future benefits which may be due the claimant. Such an effect is to be determined by the terms of the Workmen's Compensation Act specifically referring to an employer's and/or its insurer's rights of subrogation and the claimant's recovery from a third party.

Construing these statements with other evidence in the case, we conclude that there is substantial evidence of record to support the referee's finding that the understanding and agreement between the parties was that the existing liability, or "lien," in the amount of $9,976.92, subrogable as of the time of the settlement, was compromised for the net amount of $3,000.00, and that should there be future liability for compensation benefits the employer's and carrier's subrogation rights exercisable out of payments to Claimant from the third-party settlement must be adjudicated in accordance with provisions of the Act[3] pertaining thereto. In this connection, it will be noted that there is no written denial by letter or otherwise of the statement quoted above from the letter of the carrier's counsel under date of July 29,

---

[3] Section 319 of the Act, 77 P.S. §671.

1977. In fact, other letters from the carrier's counsel indicate the express intent to comply with the subrogation provisions and requirements under the Act. Accordingly, we must reject Claimant's contention that the carrier waived its subrogation rights as regards possible compensation payments made after October 19, 1976, as of which date, as noted, total payments amounted to $9,976.92.

Finally, Claimant contends that it was error for the referee to refuse to receive and consider testimony of the employer's negligence as a cause for Claimant's injuries. Specifically, Claimant contends that this evidence was relevant since the employer could have been held responsible to the third-party for an amount equal to the employer's liability under the Act if the fact finder determined that its negligence contributed to Claimant's injury, *Maio v. Fahs,* 339 Pa. 180, 14 A.2d 105 (1940),[4] and, therefore, the employer could lose its subrogation rights. Unfortunately for Claimant, however, the workmen's compensation authorities have no jurisdiction to determine questions of liability as between third-party tort feasors, including the employer; such issues must be determined in third-party common pleas cases and are not cognizable in workmen's compensation proceedings. *See Mazzeo v. M. & J. B. McHugh,* 199 Pa. Superior Ct. 400, 185 A.2d 638 (1962). Obviously, the time for Claimant to have raised the issue of the employer's negligence was in the trial court proceeding[5] before, or as a part of, the third-party settlement.

---

[4] *See also Socha v. Metz,* 385 Pa. 632, 123 A.2d 837 (1956).

[5] The negligence case giving rise to the subrogation fund in this case was a proceeding in the U.S. District Court for the Eastern District of Pennsylvania, Civil Action 76-3208. Pennsylvania subrogation law in workmen's compensation cases is applicable in such federal court cases. *See Quinones v. Township of Upper Moreland Township,* 199 F. Supp. 758 (E.D. Pa. 1961).

Of course, the subrogation right as provided in Section 319 of the Act to which the insurance carrier herein is entitled, is a qualified one. *See Soliday v. Hires Turner Glass Co.*, 187 Pa. Superior Ct. 44, 142 A.2d 425 (1958).

Accordingly, this case will be remanded for the purpose of computing and awarding payment of benefits for loss of use of Claimant's left eye with appropriate credit for payments received by Claimant from the compensation carrier and from the third party settlement as provided by law, with an award to Claimant during periods when compensation is due of 40% of each weekly amount due, to reimburse Claimant for fees paid out of the third party settlement to Claimant's counsel, and for such other credits and payments, all in accordance with the rulings and procedures as laid down in *Mazzeo* and *Soliday* and otherwise as provided under the Act.

## ORDER

Now, June 11, 1984 the order of the Workmen's Compensation Appeal Board at Docket No. A-77947, dated December 23, 1982, is reversed and the record in this case is hereby remanded to the Board for the entry of an appropriate award for the loss of use of the petitioner's left eye, with credit to the employer, United Cable Corporation or its insurance carrier for the amount received by the petitioner from the third-party settlement, this credit to be at the rate of 60% of each weekly payment, and with the remaining 40% of each weekly payment to be made to the petitioner in reimbursement of the attorney charges incurred for the recovery from the third-party, and as otherwise required by law, and until such credits and payments total the net amount received by the petitioner from the third-party settlement. Jurisdiction relinquished.