559 A.2d 92

**Peter DASCONIO, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (AERONCA, INC. and Continental Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 11, 1988.

Decided May 22, 1989.

Benjamin Paul, Philadelphia, for petitioner.

Thomas A. Kuzmick, Lawrence H. Haas, Philadelphia, for respondents.

Thomas S. Brown, Heckler, Brown, Sherry and Johnson, for respondents, Aeronca, Inc. and Continental Insurance Company.

Before CRAIG and PALLADINO, JJ., and BARBIERI, Senior Judge.

CRAIG, Judge.

Claimant Peter Dasconio appeals from an order of the Workmen's Compensation Appeal Board that affirmed a decision of a referee establishing a credit due an employer's insurer from the money the claimant and his wife recovered in settlement of a tort action, which they had instituted against a third party alleged to be partly responsible for the claimant's injuries.

The issues are:

(1) Whether *any* agreement by a compensation payer to compromise its accrued subrogation lien against money paid to the claimant by a defendant in the claimant's third-party tort action is invalid under the statutory rule that an agreement that varies the amount of compensation or the time during which it is paid or payable is wholly null and void;

(2) Whether the entire net amount received jointly by a claimant and his spouse in settlement of a third-party action is subject to subrogation with respect to the accrued compensation lien and subsequent compensation obligation;

(3) How the recovery from a third party should be applied to the satisfaction of the accrued compensation lien and to the subsequent compensation obligation, considering the expenses attributable to obtaining that recovery; and

(4) How medical expenses newly incurred *after* the settlement of the accrued lien, in connection with a third-party recovery, should be handled in relation to the subsequent compensation obligation.

## History of the Case

The material facts, as found by the referee, are not in dispute. On July 13, 1981, while the claimant was working for Aeronca, Inc., his head got caught in a punch press. He suffered a fractured skull and other injuries, leaving him blind in one eye, nearly blind in the other, hard of hearing, and suffering from various other physical problems. He received workers' compensation beginning a week after the accident.

The claimant and his wife filed a suit against three third-party defendants based on the same incident. They recovered a gross amount of $700,000 in settlement of the issue of the liability of one of those defendants. Although, as of the date of the third-party settlement, the employer's insurer had paid a total of $120,203.00 in compensation benefits, the insurer agreed in writing to accept $32,186.67 in full payment of its accrued subrogation interest, with the insurer to be free of any responsibility for legal fees attributable to obtaining that $32,186.87, provided that the claimant and his wife recovered no more than the $700,000 as a result of the suit.[1] Ultimately, the claimant and his wife did not recover anything more as a result of the suit.

1. The record in this case indicates that there was some dispute concerning whether the claimant's attorney's efforts to renegotiate this agreement may have abrogated it. However, the insurer has not

As established by a statement to the claimant from his tort attorney, the expenses attributable to the third-party recovery were as follows:

```
Gross Amount of Settlement ....................... $700,000.00
Cost Per Itemized Statement ......................    7,582.92
Due Worker Comp. Insurer .........................   32,186.67
Balance ..........................................  660,230.22
Attorney's Fee — 50% of balance ..................  330,115.11

NET TO CLAIMANT ................................. $330,115.11
```

The expenses therefore consisted of costs, $7,582.92, plus counsel fee, $330,115.11, or a total of $337,698.03, which was the obligation incurred by the claimant to obtain the gross recovery of $700,000.00.

The employer then filed a termination petition alleging that its liability for payments should cease because the claimant had full recovery through the third-party settlement. The claimant filed a petition seeking payment of medical bills incurred in treating his work-related injury.

The referee decided that, under the Supreme Court's decision in *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Maas)*, 506 Pa. 592, 487 A.2d 794 (1985), the agreement between the claimant and the employer's insurer relating to the accrued subrogation interest was null and void. Therefore, the referee directed the claimant to pay back the full amount of the compensation the insurer had paid to him as of the date of the settlement with the third party, the accrued lien amount of $120,203.

In addition, the referee determined that the net recovery from the gross amount of $700,000, after deducting the $337,698 total of legal expenses and the $120,203 accrued lien, was $242,099. The referee, following the *Rollins* approach, applied that net remainder to the employer's future compensation obligation, dividing it by the claimant's weekly compensation rate of $210.59 to determine a grace period of 1149 weeks.

appealed on that basis, but rather has chosen to argue that any such agreement is wholly null and void.

The referee recognized that the insurer should be required to reimburse the claimant for the legal expenses he expended to obtain the gross amount of $120,203, to be paid by the claimant to the insurer for the accrued compensation lien. The referee calculated that the insurer should reimburse to the claimant legal expenses, related to the accrued lien, in the amount of $57,746. (Accrued compensation amount of $120,203 divided by gross recovery of $700,000 yielded 17.1% which, applied to total expenses of $337,698, gave the result of $57,746.) The referee directed that the insurer reimburse those legal expenses to the claimant during the grace period at a rate of $105.30 per week, an amount which is 50% of the weekly $210.59 payment. (Arithmetic indicates that such an approach would mean that the claimant would not be reimbursed fully for the legal expenses of recovering the $120,203, which the claimant was to pay to the insurer *immediately*, until 548 weeks of the grace period had passed. Moreover, the board does not explain why the reimbursement rate was related to 50% of the weekly compensation amount.)

Because the referee used a *net* figure for computation of the future grace period, after deduction of all expenses, there was no need to order that the insurer make reimbursement payments to the claimant with respect to the legal expense of acquiring the portion of the recovery applied to *future* compensation.

Finally, with respect to future medical expenses submitted by the claimant, the referee ordered the defendant to pay 50% of those medical expenses.

On appeal, the Workmen's Compensation Appeal Board affirmed the referee's order. This appeal followed.

### 1. Accrued Subrogation and the Validity of the Agreement Pertaining to It.

An employer who pays workers' compensation is subrogated to the right of the employee against a third-party tortfeasor under section 319 of The Pennsylvania Work-

men's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended* (Act), 77 P.S. § 671.[2]

In *Rollins* the Supreme Court considered the validity of an agreement by an insurer to accept less than the actual amount it had paid in compensation benefits to a claimant, as of the date of his settlement with a third party, in full satisfaction of the insurer's accrued subrogation lien *in exchange for the claimant's agreeing to waive any future compensation payable under the Act.*

The Court held that the agreement was unenforceable as to all of its provisions and as to all parties under section 407 of the Act, 77 P.S. § 731, which declares that any agreement varying the amount to be paid or the period during which compensation shall be payable is wholly null and void.[3]

The Court first identified *the claimant's waiver of his right to future compensation* as the illegal element of the agreement. Then, after noting that the Court had previous-

**2.** Section 319 provides in part:
Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.

**3.** Section 407 provides in part:
On or after the seventh day after any injury shall have occurred, the employer or insurer and employe or his dependents may agree upon the compensation payable to the employe or his dependents under this act; but *any agreement* made prior to the seventh day after the injury shall have occurred, or permitting a commutation of payments contrary to the provisions of this act, or *varying the amount to be paid or the period during which compensation shall be payable as provided in this act, shall be wholly null and void.* (Emphasis added.)

ly refused to enforce a contract containing a variance from the amount of compensation prescribed under the Act even though that contract benefited the employee, the Court declared that the intent of section 407 was clear: "[A]greements which vary the amount or time for payment of compensation benefits are 'wholly null and void' and, thus, unenforceable as to all the provisions of the agreement and as to all parties." *Rollins,* 506 Pa. at 598, 487 A.2d at 797.

Because the agreement then before the Court varied the amount or time for payment of benefits *by virtue of the waiver of future rights to compensation,* the entire agreement was of no effect, and the parties had to return to their positions before the agreement existed.

Here the claimant's employer and its insurer, by their counter-statement of questions, argue that *Rollins* means that *any* agreement which varies compensation benefits and compromises the insurer's subrogation rights is null and void.

This court already has analyzed such agreements otherwise. In *Bayush v. Workmen's Compensation Appeal Board (Conemaugh Township),* 111 Pa.Commonwealth Ct. 617, 534 A.2d 853 (1987), the court affirmed a decision of the Workmen's Compensation Appeal Board granting to an employer's insurer full credit toward future compensation payable from the excess of a claimant's third-party tort settlement, despite an allegation by the claimant that the insurer had agreed to compromise the amount of that credit.

Although this court ultimately affirmed the decision of the board in that case, we did so only after stating that the ground upon which the board had based its decision—similar to the argument advanced by the employer and insurer here—was an erroneous interpretation of *Rollins:*

Rollins Outdoor Advertising does not stand for the proposition, however, that an employer's right to credit against future compensation may never be released, waived or relinquished by an employer. In Rollins Outdoor Advertising, the agreement was void under the

provisions of the Act. This brought into effect by operation of law the provisions of Section 319. By contrast, in the present case, neither of the parties contend, *nor do we find, that a release or waiver by an insurance carrier of its right to a credit against compensation payable to a claimant after the date of settlement of an action against a third-party tortfeasor would violate the provisions of the Act or the public policy or laws of this Commonwealth.* The real question in this case is whether Employer ever agreed to release or waive its right to credit. If it is shown that Employer did indeed agree to release its rights, then Section 319 would be inapplicable.

*Bayush,* 111 Pa.Commonwealth Ct. at 622 n. 4, 534 A.2d at 856 n. 4 (emphasis added).

Although the statement from *Bayush,* emphasized above, relates to the future credit aspect of the subrogation rights, while the present case involves the accrued lien aspect of the subrogation rights, the applicable principle does not differ. A compromise relating solely to subrogation rights is distinct from, and does not involve, a commutation or variance as to the amount of compensation to be paid.

### a. Length of the Grace Period

The employer and insurer argue that any such reduction in the accrued subrogation lien will alter "the period during which compensation shall be payable" because it will extend the grace period (the time during which the employer does not pay future compensation because of the credit deemed to exist from the tort recovery) which *Rollins* calculated by subtracting from the claimant's net tort recovery (after deduction of attorney's fees and costs) the amount of compensation already paid by the insurer and then dividing that result by the weekly rate of compensation.

The employer and insurer err in assuming that the agreement here will change the grace period. The Supreme Court, in *Rollins,* applied section 319 of the Act as follows:

Appellants [employer and insurer] are entitled to subrogation in the entire amount [of the claimant's gross

recovery less attorney's fees and other legal and medical costs of litigation]. They are entitled to an immediate reimbursement for disability payments already made, and they are entitled to have the balance of the net recovery treated as an advance on any future installments of compensation during [the claimant's] disability. Stated algebraically, where:

R = gross recovery,

c = costs of recovery including attorney's fees and any other proper disbursements made to generate the gross recovery,

n = net recovery,

p = previously paid compensation,

f = future compensation payable [creditable],

w = weekly compensation payments,

g = grace period (in weeks)

Then $R-c=n$; $n-p=f$; $R-c-p=f$ and $\frac{f}{w} = g$; therefore

$$\frac{(R-c-p)}{w} = g.$$

*Rollins,* 506 Pa. at 600, 487 A.2d at 798.

Note that the Supreme Court's approach clearly underscored the point that the employer's subrogation rights have two aspects—the "past" aspect is the accrued lien, "p", and the "future" aspect involves "f", the credit toward compensation due to be paid subsequent to settling the accrued lien.

At this point, one should note particularly, that, although section 319, n. 1 above, speaks in terms of total (gross) recovery subject to deduction of expense disbursements, the Supreme Court in *Rollins* used the gross amount for "p", the previously paid compensation (without deduction for legal expenses) and used the net amount for "f", future compensation (after deduction of expenses) in analyzing the validity of the waiver agreement—the key issue in that case.

The agreement involved in *this* case relates only to the past aspect of the subrogation right. The employer and insurer agreed to accept $32,186 from the claimant in satis-

faction of the accrued lien at the time of the tort settlement. Without that agreement, they would have been entitled to receive $120,203, which was the amount of compensation benefits actually paid to the claimant as of the date of the settlement. The approximate difference of $88,017 is the benefit to the claimant of the bargain under the agreement. Obviously, the agreement did not alter the $120,203 amount of compensation benefits actually paid previously ("p" in the Supreme Court's formula, stated above). Consequently, that actual $120,203 amount of previously paid compensation must still be used as "p" to calculate "f," the amount of the future compensation credit; hence the length of the grace period ("g" in the formula) is the same, even though the employer and insurer have bargained away their right to receive back the full amount of "p," the past compensation paid.

If the agreed $32,186 amount were used as "p" instead of $120,203, in the formula calculation ultimately determining the amount of the future credit, as the employer and insurer contend here, then the value of the agreed bargain for the claimant would be virtually meaningless—merely the time value of the difference. The approximate difference of $88,017 between the actual and agreed amounts, instead of constituting the benefit of the claimant's bargain, as intended by the agreement, would be added to the future credit, to the unintended benefit of the subrogated insurer instead.

The agreement between the claimant and the insurer speaks of a *waiver* of subrogation rights with respect to a portion of the accrued lien; in the event of a settlement such as did occur, the agreement describes the insurer as getting $32,186 as the reimbursement for its lien interest (of $120,203), with no mention of increasing the future credit. *See* n. 4, *infra.* There would be no real waiver if the insurer ultimately received by way of additional future credit the $88,017 sum it had waived as to the past lien reimbursement.

The employer and insurer's possible motive for bargaining is understandable. They are primarily liable to the claimant for payment of workers' compensation benefits during the entire period of the claimant's disability. In the present case, the parties agree that the claimant's disability is total and permanent. The employer and insurer made their offer to accept *less* in satisfaction of the accrued lien for the purpose of encouraging the claimant and his wife to accept the substantial settlement offer made by one of the defendants in the third-party tort action.[4] The benefit to the employer and insurer of this bargain was to assure that they would recoup substantial amounts by way of subrogation from the claimant's tort recovery ($32,186 on the accrued lien and a large credit toward future compensation payable) rather than to risk recouping nothing at all if the claimant lost at trial. However, their compromise of subrogation rights as to the accrued lien had no effect whatsoever on the amount of compensation that the claimant had actually received in the past or on his right to receive compensation payments in the future during the entire

---

4. The letter of September 13, 1983, from the insurer's counsel to the counsel of the claimant and his wife, memorializing the agreement, reads in part as follows:

We hereby confirm our telephone conversation of September 12, 1983, in which we discussed and agreed upon the basis upon which Continental Insurance Company will be reimbursed for its lien interest in the event of a recovery by Mr. D'Asconio [sic] in the above matter.

You have advised us that a structured settlement has been proposed by Cyril Bath Company, one of the defendants herein. *In order to promote settlement with that defendant,* Continental Insurance Company has *waived* its entitlement to reimbursement of all or a portion of its lien interest from the proceeds of that structured settlement on the following basis:

In the event you are successful in obtaining judgment on behalf of Mr. D'Asconio against AQL, Inc. or Matrix–Churchill, Continental will receive full reimbursement of its lien which presently totals $96,560.06. . . .

In the event a judgment is not obtained against AQL, Inc. or Matrix–Churchill, Continental will receive the sum of $32,186.67 in a lump sum from the proceeds of the proposed structured settlement with Cyril Bath Company. *This sum will constitute a net payment without any further deduction of a fee for your account.*

Exhibit C–2 of the hearing of June 27, 1984 (emphasis added).

period of his disability. Therefore, the agreement did not alter the amount of compensation or the time during which it is paid or payable in violation of section 407 of the Act as construed in *Rollins.*

An agreement between a claimant and his or her employer or insurer by which the employer or insurer compromises its right to subrogation to the claimant's recovery from a third-party tort action (by reducing the amount required to satisfy the accrued lien or by reducing the length of the grace period or both) is not null and void under section 407 of the Act so long as the claimant does not agree to give up his or her right to be paid the proper rate of compensation during the entire period of disability.

### b. Attorney's Fees

The employer and insurer also contend that any deviation from full credit for the accrued subrogation lien necessarily affects "the amount to be paid" because it will alter the calculations for determining the share of attorney's fees that they must pay to the claimant.

First, that contention has no basis in section 407 because that section's context clearly indicates that the "amount to be paid" refers to "compensation" in the same sentence, not to reimbursement of legal expense. *See* n. 3 above.

Secondly, the further argument, that enforcing this agreement will alter the calculations determining attorney's fees and hence alter the amount of compensation, is a contention which misses a key point of the specific agreement between these parties.

Because the agreement here specified that the $32,186.67 to be paid by the claimant was to "constitute a net payment without any further deduction of a fee for your [claimant's attorney's] account," the resolution of this case, unlike *Rollins,* cannot involve the charging of *any* legal expense against the employer with respect to the *accrued lien* governed by the agreement, either by deduction from the $32,186.67 payable to settle the accrued lien obligation (of

$120,203) or by installments linked to future weekly install-
ments of compensation.

However, this case does involve an accounting for legal
expenses in relation to the amount to be credited to the
employer as to the "future" compensation installments, i.e.,
those payable subsequent to satisfaction of the accrued lien.
*See* part 3 below. But, because this agreement does not
touch upon the matter of the future compensation or the
future grace period in any way, the distribution of those
legal expenses is unaffected by the agreement.

The agreement is valid in every respect.

2.   The Spouse's Interest in the Joint Tort Settlement

The referee did not expressly address the fact that the
third-party settlement went jointly to the claimant and his
wife; rather, the referee simply used the entire net amount
of the settlement (after deduction of attorney's fees and
costs and of the full amount of compensation paid by the
insurer to the date of the tort settlement) to calculate the
credit due to the insurer against future compensation and
hence the length of the grace period.

The board's discussion of this issue consisted of quoting
the pertinent portion of section 319 and then stating, "The
language of the Act convinces the Board that the entire
joint settlement is subject to subrogation. Therefore the
Board considers the Referee's subrogation on the entire
award correct." Although we agree that the board was
correct on this point in this case, we must note that this
discussion does not adequately explain why the board ruled
as it did with respect to the claimant's wife's interest.

The employer and insurer note in their brief that the
language of section 319 refers to "any recovery against
such third person" without qualification as to who signs the
release. They contend that "[n]either *Rollins* or the Act
contain a special provision calling for further deductions to
be made for married claimants or joint settlements, nor
should such a provision be read into the Act without legisla-
tive instruction."

■ To be sure, Pennsylvania law definitely recognizes a right of a wife to recover her *own* damages for loss of consortium arising from a tortious physical injury to her husband. In *Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974), the Supreme Court held that, because a husband had a right to recover for loss of consortium as a result of a tortious injury to his wife, the Equal Rights Amendment to the Pennsylvania Constitution, Pa. Const. art. I, § 28, required that a wife be allowed to recover for such a loss as well. Where a claim for loss of consortium is asserted, the losses alleged are those personal to the uninjured spouse for deprivation of the injured spouse's society and services. *See generally,* 3 Restatement (Second) of Torts § 693 and Comments d and f; W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 125 (5th ed. 1984); 2 S. Speiser, C. Krause & A. Gans, The American Law of Torts § 8.22 (1985). This court expressly recognized and applied that principle in the case of *Kowal v. Department of Transportation,* 100 Pa.Commonwealth Ct. 593, 515 A.2d 116 (1986), *petition for allowance of appeal denied,* 514 Pa. 650, 524 A.2d 496 (1987).

■ The release executed by both the claimant and his wife in the tort case here recites that they both had instituted suit against the third-party defendant. However, the third party's payment of a single lump sum to the claimant and his wife jointly makes it impossible at this juncture to place a separate value on the damages to which the wife might have been entitled.

Moreover, there is no authority or jurisdiction in the workmen's compensation system for determining the amount of a wife's consortium damages previously recovered in a common pleas proceeding. Such a determination is solely one for a jury in the common pleas proceeding; such common pleas issues are not cognizable by compensation authorities. Compare *Fidler v. Workmen's Compensation Appeal Board (United Cable Corp.),* 83 Pa.Commonwealth Ct. 155, 478 A.2d 907 (1984), where the common pleas issue, the liability of the employer for contribution to

the third party, (permissible at that time, *Maio v. Fahs*, 339 Pa. 180, 14 A.2d 105 (1940)), was not addressed in the third-party action, but was raised in the workmen's compensation case. In holding that this common pleas issue could not be raised in the compensation case, we stated:

> Unfortunately for Claimant, however, the workmen's compensation authorities have no jurisdiction to determine questions of liability as between third-party tort feasors, including the employer; such issues must be determined in third-party common pleas cases and are not cognizable in workmen's compensation proceedings. See *Mazzeo v. M. & J.B. McHugh*, 199 Pa.Superior 400, 185 A.2d 638 (1962). Obviously, the time for Claimant to have raised the issue of the employer's negligence was in the trial court proceeding before, or as a part of, the third-party settlement.

83 Pa.Commonwealth Ct. at 163, 478 A.2d at 911.

Thus, the claimant's failure to resolve this issue in the common pleas proceeding leaves him and his wife with a failed burden of proof with which we may not become involved. We note that the agreement between the claimant and the insurer looked to the entire $700,000. *See* n. 4 above. Moreover, the issue apparently was not raised before the referee and, in any event, the workmen's compensation insurer, an interested party as subrogor, would be entitled to due process as to such a determination; and the right to participate cannot be resolved by the claimant's attorney's simple assertion that the wife's interest was equal to that of the totally and permanently disabled claimant.

Accordingly, we must affirm the application of the $700,-000 fund solely as a subrogable fund related to the workers' compensation obligations of the claimant.

### 3. Apportioning the Third Party Recovery and the Expenses

#### a. *Accrued Lien for Past Compensation*

■ Section 319, along with establishing the subrogation right, mandates that:

> [R]easonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employee.... The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement.

Thus, as a general rule, an employer who receives the benefit of having all or part of a recovery from a third party applied in satisfaction of the accrued lien for previously paid compensation, must pay or credit the claimant with a pro-rata share of the expenses incurred in obtaining that benefit. The *Rollins* methodology handled the legal expense related to the accrued lien by noting that the accrued lien amount was 40% of the total recovery, therefore attributing 40% of the total legal expense to the accrued lien, and requiring the employer and insurer to repay that accrued lien legal expense (related to *past* compensation) to the claimant in weekly installments over the period of the entire grace period related to *future* compensation.

■ In this case, the valid agreement obviates any need to use the *Rollins* approach for handling the legal expense relating to the accrued lien amount because the agreement here clearly declared that the insurer's obligation to reimburse that legal expense was waived, in view of the insurer's willingness to accept $32,186.67 in satisfaction of the $120,203 lien amount.

### b. Future Compensation Payments

■ In granting a subrogation right to the employer "to the extent of compensation payable," does section 319 assure the employer that, after satisfaction of the accrued lien, the subrogation right also applies to the subsequent or *future* installments of compensation payable to the claimant?

A long line of cases have held that it does; in chronological order, they include *Soliday v. Hires Turner Glass Co.,*

187 Pa.Superior Ct. 44, 142 A.2d 425 (1958); *Wall v. Conn Welding and Machine Co.*, 197 Pa.Superior Ct. 360, 179 A.2d 235 (1962); *Mazzeo v. M. & J.B. McHugh*, 199 Pa.Superior Ct. 400, 185 A.2d 638 (1962); *Fidler v. Workmen's Compensation Appeal Board (United Cable Corp.)*, 83 Pa.Commonwealth Ct. 155, 478 A.2d 907 (1984). And *Rollins* was in agreement with that principle. The subrogation is effectuated, all those cases agree, by crediting the leftover third-party recovery amount to the employer with respect to future weekly installments of workers' compensation payable, subject, of course, to the modification, expiration or termination of compensation entitlement. To the extent that this credit relieves the employer from making actual installment payments, the cases have referred to it as conferring a "grace period."

In return for receiving that benefit of a credit against future installments, is the employer charged with a pro-rata share of the legal expense attributable to generating that credit? As a matter of equity, the employer or insurer certainly should be so charged, and the courts have confirmed the point. *Soliday* so held, at a time when section 319 dealt with legal expenses only by the sentence which requires that "disbursements ... shall be prorated between the employer and employe,...." Then section 319 was amended by the Act of December 28, 1959, P.L. 2034, § 4, to add:

> The employer shall pay that proportion of the ... fees and ... disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement.

*Wall* and the later decisions, above cited, did not regard this added sentence as limiting the previously mandated obligation to prorate the burden of legal expense generally, and applied that view by holding that employers must reimburse claimants for legal expense incurred in generating the future compensation credit, by having the employer pay the claimant, as each week of credit was enjoyed by the employ-

er, an actual reimbursement of the legal expense proportionately attributable to that week.

Because section 319 grants the subrogation right to the extent of compensation "payable," an employer can rightly claim the benefit of subrogation as to future installments, not just as to the accrued lien at the time of third-party recovery. Hence, the duty to share the burden of legal expense also extends to the future subrogation as well as to the past. Moreover, the later added provision, burdening the employer with legal expense in the same proportion as the amount of compensation paid or "payable" at the time of third-party recovery bears to the total recovery, therefore can be read as consistent with the obligation to reimburse the legal expense of obtaining the subrogation benefit as to compensation "payable" in future installments. *Wall,* 197 Pa.Superior Ct. at 365–68, 179 A.2d at 237–38.

Determining future compensation credit and the maximum grace period, the *Rollins* method, which was the approach used by the referee and approved by the board in this case (applying only the *net* balance of recovery to future compensation, after deduction of accrued lien and all expenses), involves the following computations:

$$\frac{(R-c-p)}{w} = g$$

| | |
|---|---|
| Gross recovery from third party — R | $700,000 |
| Less total legal expenses — c | −337,698 |
| Net recovery — n | 362,302 |
| Less accrued compensation lien — p | −120,203 |
|   (satisfied by agreed payment of $32,186.67) | |
| Net amount applicable to future compensation — f | 242,099 |
| Divided by weekly compensation amount — w | 210.59 |
| Yields <u>maximum</u> number of weeks of grace period — g | 1,149 |

Thus the result remains at the same number of weeks in the maximum grace period as the referee found (remembering that the grace period ultimately can vary as a result of termination or modification of compensation and other circumstances). Because this court's decision has upheld the validity of the agreement between claimant and insurer, the

claimant must be given credit for satisfying the $120,203 amount of the accrued lien by virtue of the agreement; hence "p" is unchanged and the mathematical result is the same as that which the referee reached by invalidating the agreement and requiring full payment of the accrued lien.

Because that agreement also relieved the insurer from reimbursing legal expense with respect to the accrued lien, there is now no need to make provision for such reimbursement of the accrued lien expenses during the course of the future compensation grace period, as the referee's order did in this case, and as the Supreme Court did in *Rollins*.

Moreover, whenever the grace period as to future compensation is computed on the basis of a *net* figure (legal expense subtracted) rather than a gross figure, the employer receives a shorter grace period but correspondingly has no obligation to reimburse legal expenses attributable to the third-party recovery amount which makes the grace period possible.

Research discloses that the Bureau of Workers Compensation of the Department of Labor and Industry, by 35 Pa.Code § 121.18 and Form LIBC–380, has provided for implementation in a different manner. That approach, whenever there are legal expenses attributable to the accrued compensation lien which the employer or insurer must reimburse to the claimant, accomplishes that reimbursement immediately, at the time of the third-party recovery, by having the claimant pay over only a net amount as to accrued compensation, deducting and keeping the sum attributable to the legal expenses of recovering the amount of the accrued lien. Then the bureau's regulations and form treat the gross balance of recovery (gross recovery minus total accrued lien) as a fund for credit against future compensation, subject to having the employer or insurer reimburse the claimant for legal expenses by weekly installments throughout the course of the grace period.

William J. McKee, *Workers' Compensation*, XII Pa.Law Journal–Reporter, No. 12, pp. 3, 4, correctly points out, as to this method (which he calls the "bureau method"), that:

The true genius of the bureau method is that it takes account of that most elusive factor in our calculations, the time-value of money. By paying the claimant each week a proportional share of fees and costs, the value, although not the actual amount, of the payments decreases over time in lock step with the depletion in the value of the employer's credit. For if we concede that the right to receive $100 [say] 17 years from now is worth less than $100 now, we must also concede that a $100 credit 17 years from now is worth less than a present credit in the same amount.

Hence, when the time value of money is considered, it can be seen that the bureau method, by reimbursing the claimant for legal expense attributable to the accrued lien amount at the time the claimant satisfies the accrued lien from the third-party recovery, thus sees to it that the insurer receives immediate satisfaction of the accrued lien and, at the same time, that the claimant receives prompt reimbursement of the legal cost of obtaining it. Furthermore, with respect to future compensation, the so-called bureau method—using the gross balance of recovery—creates a longer grace period but, during that grace period has the defendant reimbursing the remaining legal expense in weekly installments, with each week's legal expense reimbursement being proportionate to the credit received by the employer for that week.

However, in this case, we note that neither the claimant nor the employer or insurer have preserved any issue concerning the subrogation method. The claimant has raised only the substantive issues of the validity of the agreement, the treatment of the spouse's consortium rights and the question of future medical payments, with no objection whatsoever to the methodology adopted by the referee and affirmed by the board.

The employer and insurer also have not questioned the method administratively applied here, perhaps because, taking a position that the agreement was invalid, they anticipated an effect favorable to them, being allowed to stretch out

the claimant's receipt of his legal expenses as to the accrued lien over the period of some twenty-two years (1149 divided by 52), even though they would have the benefit of immediate payment of the total accrued lien amount.

Therefore, because the parties have not preserved any question concerning the methodology, this court cannot consider possible advantages of the "bureau method," or any other mode of computation. Having determined the agreement between claimant and insurer to be valid, we must simply apply that conclusion as we use the referee's unchallenged methodology for determining the subrogation apportionment.

One virtue of the method accepted by the parties in this case is that it bases the grace period computation only upon the net amount of the recovery left in the claimant's hands after payment of his attorney and the accrued lien.

### 4. Medical Expenses

■ Finally, the claimant argues that the board's affirmance of the referee's order, directing the insurer to pay only 50% of the claimant's future medical expenses related to the compensable injury, was in error because section 306(f) of the Act, 77 P.S. § 531, provides for payment of medical expenses without regard to loss of earning power, and this court has held that the fact that a claimant's injury was no longer compensable (because it did not result in loss of earning power) did not in and of itself preclude the claimant from obtaining reimbursement of medical expenses under section 306(f). *Deremer v. Workmen's Compensation Appeal Board*, 61 Pa.Commonwealth Ct. 415, 433 A.2d 926 (1981).

The employer and insurer have not cross-appealed from the board's order on this point. Rather, they argue only that the board's order should be affirmed because this court has held that medical payments are "compensation" under the Act, citing *Duquesne Light v. Diggs*, 46 Pa.Commonwealth Ct. 58, 406 A.2d 246 (1979), and *Workmen's Compensation Appeal Board v. DelCimmuto*, 23 Pa.Common-

wealth Ct. 43, 350 A.2d 459 (1976), and so are subject to the employer's credit against future compensation owed to the claimant.

The medical expenses in dispute are only those incurred by the claimant *after* the date of the tort settlement, when the insurer sought to stop paying for medical expenses on the basis of its view that such expenses should be paid out of the credit toward compensation resulting from the tort recovery.[5]

Without question, section 306(f) lists payment of medical expenses associated with the compensable injury as a form of compensation.[6] Because section 319 provides that the employer shall be subrogated "to the right of the employe ... to the extent of compensation payable under this article by the employer", payments of such medical expenses by the employer are compensation payments subject to subrogation rights against a claimant's recovery from a third party, and subject to a credit toward future compensation, where that recovery exceeds compensation paid at the time of the recovery.

However, as section 306(f)(1) expressly declares, *see* n. 7 above, the medical expenses aspect of compensation remains an aspect for which the employer is liable—*all* the medical expenses related to the compensable injury.

> The referee's order, as to medical expenses, reads:
> The defendant is ORDERED AND DIRECTED to pay fifty percent (50%) of the medical expenses submitted by Claimant in treating his condition as he has so proved the expenses can be related.

The referee's decision contains no explanation concerning the provision for actual payment of only 50% of medical

---

**5.** The insurer's right to subrogation as to medical payments it made *before* the date of the settlement was included in its agreement to accept $32,186.67 in full satisfaction of its accrued subrogation lien.

**6.** Section 306(f) provides in part:
   The following schedule of compensation is hereby established:
   (1) The employer shall provide payment for reasonable surgical and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies, as and when needed....

expenses. The referee's Conclusion of Law No. 1 merely states that the claimant "is entitled to be reimbursed by the defendant for 50% of those [related medical] expenses...." (R. 19). Because the claimant's legal fee arrangement for the tort settlement consisted of a 50% contingent fee agreement, there may have been in the referee's mind some relationship to the legal expense proportion. However, the Workmen's Compensation Appeal Board, in its decision, states that:

> Medical payments are compensation and are subject to subrogation. Defendant is entitled to set off medical payments against the remaining balance of Claimant's recovery.

(R. 42)

The brief for the employer and insurer tackles these cryptic statements of the referee and board and concludes that the decision was:

> [T]hat medical payments are compensation and the claimant was entitled to 50% reimbursement for medical expenses incurred after the date of the third party settlement and that the Carrier was entitled to a 50% set off for medical expenses against the Claimant's remaining balance of the third party recovery. (See R. 19; R. 42).

The employer and insurer have not cross-appealed the determination which they have thus interpreted. At this juncture, in view of our ruling that the agreement between claimant and insurer eliminated the need to reimburse any legal expenses as to accrued compensation and because the treatment of the legal expenses of subrogation related to future compensation has been accomplished by crediting the employer only with the net balance of recovery, the approach to future medical expenses should not have any relationship to legal fee reimbursement.

In considering general methods for handling future medical expenses (in as-yet-undetermined amounts) in these cases, there can either be a requirement (1) that the employ-

er pay medical expenses, as they arise, by making additional cash payments to the claimant, or (2) that any newly arising medical expenses be charged against the employer's grace period credit, with the necessary result of reducing the number of weeks of the grace period.

With the claimant's brief contending that future related medical expenses are the employer's responsibility (with which we agree) but not raising any question as to cash payment versus credit, and the respondents' brief not raising any question in opposition to the 50–50 approach, this court is required to affirm the board's decision, as explained by the respondents' interpretation, with respect to the method of medical expense reimbursement.

Therefore, as to future medical expenses related to the compensable injury, this court will affirm the decision requiring that, as those expenses arise, the employer shall pay 50% of them in actual payments to the claimant and, with respect to the remaining 50% of those charges, shall be entitled to consider them reimbursed by charging them against the employer's grace period credit, correspondingly reducing the number of weeks of the grace period.

Requiring additional cash payments would undoubtedly simplify calculations because the number of weeks in the grace period would remain constant, at least so long as the weekly compensation obligation remained in effect, without changes in amount.

However, the absence of any attack on the board's method means that this court is unable to insist, sua sponte, on any method different from what the board has adopted.

## Conclusion

The order will reverse the board's decision in part, by holding the agreement between claimant and insurer to be valid under section 407 and the accrued compensation lien amount of $120,203 to be satisfied by the payment of

$32,186.67 to the employer, without any obligation to reimburse to the claimant the pro-rata share of legal expenses attributable to that lien amount of 120,203; the order will affirm the board's requirement that the employer make cash payment to the claimant of 50% of any medical expenses related to the compensable injury and incurred after the period covered by the accrued compensation lien; and the order will modify the board's decision by providing that $242,099, as the net balance of the third-party recovery without any deduction for a consortium interest of claimant's spouse, shall constitute a fund for credit against any compensation, including the remaining 50% of any medical expenses related to the compensable injury, payable subsequent to the period covered by the accrued lien.

## ORDER

NOW, May 22, 1989, the decision of the Workmen's Compensation Appeal Board is reversed in part in that the agreement between the parties is held to be valid and the accrued compensation lien amount of $120,203 shall therefore be satisfied by the payment of $32,186.67, without any obligation to reimburse the claimant for the pro-rata share of legal expenses attributable to that accrued compensation lien amount; the Board's decision is affirmed to the extent that it requires the employer to make cash payment to claimant of fifty percent (50%) of any medical expenses related to the compensable injury and incurred after the period covered by the accrued compensation lien; and the Board's decision is modified to provide that $242,099, as the net balance of the third-party recovery after deduction of legal expenses but without any deduction for a consortium interest of claimant's spouse, shall constitute a fund in the claimant's hands for credit against any compensation, including the remaining fifty percent (50%) of any medical expenses related to the compensable injury, payable subsequent to the period covered by the accrued lien.