Lyrian K. MILLER, Widow of Melvin E. Miller, Deceased, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (GIANT FOOD STORES, INC.), Respondent.

GIANT FOOD STORES, INC., Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (MILLER), Respondent.

Commonwealth Court of Pennsylvania.

Argued April 10, 1997.
Decided Aug. 3, 1998.

Gregory D. Geiss, Harrisburg, for petitioner.

Thomas P. Lang, York, for respondent.

Before DOYLE and LEADBETTER, JJ., and JIULIANTE, Senior Judge.

LEADBETTER, Judge.

This case presents two questions concerning the respective rights of employers and claimants when the proceeds of a third party tort action satisfy some or all of the employer's obligation to provide compensation to an injured employee under the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1– 1041.4.[1]

Lyrian K. Miller (claimant) is the widow of Melvin E. Miller. Mr. Miller was killed in the course and scope of his employment at the Giant Food Store (employer or Giant) on January 16, 1984. On January 31, 1984, claimant and Giant entered an Agreement for Compensation for Death, under which claimant was paid compensation at the rate of $214.47 per week, beginning January 17,

1984. The compensation was to continue at that rate until claimant's children became adults under the Act, whereupon the compensation rate would decrease to $164.07.

In 1985, pursuant to its subrogation rights, employer, through its counsel, instituted an action for the wrongful death of Mr. Miller against various third party tortfeasors. Mrs. Miller retained her own counsel and, through him, assumed control of the third party action. Thereafter, according to the parties' stipulation:[2]

In order to facilitate settlement of claimant's wrongful death action, Claimant and Giant agreed that Giant would accept a payment of $30,000.00 as compromise settlement of Giant's accrued subrogation lien of $69,516.23. Claimant and Giant further agreed that the difference between the payment and accrued lien, $39,-516.12, which benefited the claimant, completely and fully satisfied Giant's duty to reimburse to Claimant a portion of the reasonable attorney's fees and other proper disbursements incurred in obtaining the settlement in the wrongful death action.

Stipulation No. 7, p. 3. Concurrently, claimant negotiated a settlement of the third party action, which was approved by the court of common pleas on November 22, 1989. According to the terms of the settlement, the third party defendants agreed to make: an immediate cash payment of $150,000.00; payments to Mrs. Miller of $1,000.00 per month for her life with a guaranteed minimum of 240 (twenty years') payments ($240,000.00) (annuity payments); and three additional lump sum payments to Mrs. Miller of $10,-

---

1. Section 319 of the Act, 77 P.S. § 671, provides that:

   Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay

   that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery of such person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.

2. This stipulation was submitted to the WCJ in connection with employer's subsequent termination petition.

000.00 on November 10, 1995, $15,000.00 on November 10, 2000, and $25,000.00 on November 10, 2005. The trial court ordered the initial cash payment distributed as follows: $110,000.00 to Mrs. Miller's counsel; $30,000.00 to employer "as compromise settlement of existing workers' compensation lien;" and $10,000.00 to Mrs. Miller.

In March of 1990, employer filed a termination petition alleging that, based upon these agreements, it had no further obligation to make payments under the Act. Before the WCJ, the parties stipulated to the above-described facts and further agreed that:

> Claimant and Giant stipulate that Giant has no obligation to reimburse Claimant any additional monies for attorney's fees. Claimant and Giant further stipulate that attorney's fees are not an issue in this proceeding.

Stipulation No. 8, p. 3.

The WCJ found that Mrs. Miller's annuity payments would always exceed the workers' compensation benefits to which she would be entitled, and therefore suspended payment of benefits. However, he also "rejected" Stipulation No. 8, and ordered Giant to pay Mrs. Miller "a sum equal to 25% of the compensation otherwise payable to the claimant and so long as defendant is entitled to credit..."

Employer appealed the WCJ's decision to the Board, arguing that the order to pay further attorney's fees was contrary to the parties' settlement. The Board agreed with employer on this point and concluded that employer need not further reimburse Mrs. Miller for attorney's fees. In addition, although Mrs. Miller had not appealed the suspension of benefits, the Board, *sua sponte*, capped Giant's subrogation credit at $300,000.00, based upon its view that $300,000.00 was the net recovery to Mrs. Miller.[3]

Both sides petitioned this court for review. In its appeal, Giant argues that the Board exceeded its authority by, *sua sponte*, capping the amount of its subrogation credit when claimant had not challenged the unlimited suspension ordered by the WCJ. Indeed, this court has so held, noting that:

> *Sua sponte* consideration of an issue deprives counsel of the opportunity to brief and argue the issues and the Board of the benefit of counsel's advocacy.

*Follett v. Workmen's Compensation Appeal Bd. (Massachusetts Mut. Ins. Co.)*, 122 Pa. Cmwlth. 58, 551 A.2d 616, 621 (1988), *appeal denied*, 522 Pa. 606, 562 A.2d 828 (1989).[4] On the other hand, Mrs. Miller argues that the Board has inherent power to correct legal errors or inconsistencies in the decision of a WCJ, citing *Gateway Coal Co. v. Workmen's Compensation Appeal Bd. (Laboda)*, 138 Pa.Cmwlth. 332, 588 A.2d 73 (1990), *appeal denied*, 528 Pa. 633, 598 A.2d 286 (1991). We did state in *Gateway* that:

> The Board has broad discretionary power to order a remand in the interest of justice. The Board found that the referee's findings of fact were inconsistent and that there was a misunderstanding as to the meaning of disability under The Pennsylvania Workmen's Compensation Act. Furthermore, the referee had attempted to combine three inconsistent medical opinions.... The Board should not be forced to review an imperfect decision of a referee that can easily be rectified.

*Id.* 588 A.2d at 75 [citations omitted]. We are not dealing here, however, with a remand for clarification of the WCJ's order, nor do we see any inherent inconsistency or legal error in his holding regarding employer's subrogation rights as to future benefits. As the WCJ accurately noted, so long as the third party settlement is not breached,[5]

---

**3.** The "net method" of calculating subrogation credit has since been rejected by our Supreme Court. *P & R Welding & Fabricating v. Workmen's Compensation Appeal Bd. (Pergola)*, 549 Pa. 490, 701 A.2d 560 (1997).

**4.** Claimant asserts that, although she did not raise the issue before the Board, it was, in fact, briefed by Giant in a post-hearing submission. However, she did not include any such brief in her supplemental reproduced record, nor can we locate any in the original record. Factual assertions in briefs which are not supported in the record are highly disfavored and will not be recognized.

**5.** We note, however, that the possibility, however remote, of a breach of the settlement agreement mandates that compensation be suspended, as

claimant's lifetime annuity thereunder (without even considering her additional lump sum payments) will always exceed the compensation benefits to which she is entitled. Nothing in the Act provides any basis for limiting employer's subrogation right to some amount less than that actually received by claimant. The necessity to calculate a "grace period" for suspension of benefits (arising from the usual situation in which a lump sum award acts as a credit against future benefits) is simply not applicable where, as here, the third party payment takes the form of an unlimited life annuity. Thus, it was the Board, not the WCJ, which committed a legal error by attempting to impose a grace period based upon the guaranteed minimum value of the settlement as though that were a fixed or actual value. Accordingly, we will reinstate the WCJ's order in this regard.

In her appeal, Miller argues that the Board erred in enforcing the parties' agreement that employer's waiver of its right to collect nearly $40,000.00 of its accrued subrogation lien satisfied its obligation to pay a pro rata share of attorney's fees and expenses of the tort action. First, she asserts that the WCJ rejected the agreement because he found as a fact that it was not a "true meeting of the minds," and that the Board was not free to reject this finding. This argument is wholly meritless. Since the only record evidence on the subject is the clear and unequivocal stipulation signed by both counsel, such a finding would not have been supported by substantial evidence. Moreover, the WCJ made no such finding.

Instead, his decision makes clear that he refused to enforce the agreement on the basis of equitable principles, reasoning that since Giant received the benefit of the subrogation provisions of the Act, it should also be bound by the Act's requirement that an employer pay a pro rata share of attorney's fees.

■ Claimant's second argument that the Board erred in enforcing the attorney fee agreement does not adopt the WCJ's equity analysis,[6] but simply recounts her rights under this court's interpretation of the Act, as though she had never altered those rights by agreement. However, she did alter those rights by giving up an uncertain potential claim to additional reimbursement for counsel fees in exchange for receipt of substantial lump sum payments which otherwise would have gone to satisfy employer's pre-existing lien. (*See* n. 6 *supra*). This agreement was negotiated at arms length, with both sides represented by independent counsel, and we are aware of no reason why it should not be given full force and effect.[7]

Accordingly, we affirm that portion of the Board's order relating to attorney's fees, and vacate that portion of the order limiting employer's subrogation credit to $300,000.00, remanding with instructions to reinstate the WCJ's order suspending payment of benefits without limitation.

### ORDER

AND NOW, this 3rd day of August, 1998, that portion of the order of the Workmen's

the WCJ did, rather than terminated as Giant requested.

6. Even if we were to read claimant's arguments in a sufficiently expansive and creative manner as to include the WCJ's analysis, we are constrained to say that we see no particular inequity in the terms of the agreement. Employer gave up its right to immediate payment of $39,516.12 (or approximately 36% of the total attorneys' fee of $110,000.00), in exchange for claimant's waiver of her right to demand any further reimbursement for counsel fees. Given the structure of the third party settlement, without knowing how long Mrs. Miller will live, it is impossible to determine whether the 36% contribution under the agreement is more or less than employer's pro-rata share would ultimately have turned out to be under the Act. Moreover, as a result of Giant's waiver, the $39,516.12 was available for

lump sum distributions to Mrs. Miller. Of the $200,000.00 in lump sum payments funded by the third party defendants in addition to Mrs. Miller's annuity, under the agreement Giant received $30,000.00 and Miller received $60,-000.00. Absent the agreement, Giant would have been entitled to $52,137.00 ($69,516.23 minus 25% counsel fee), leaving only $37,863.00 for Mrs. Miller.

7. Section 407 of the Act, 77 P.S. § 731, which prohibits agreements varying the amount of compensation to be paid or the length of time over which compensation is payable, does not apply. We held in Dasconio v. Workmen's Compensation Appeal Bd. (Aeronca, Inc.), 126 Pa.Cmwlth. 206, 559 A.2d 92, 98 (1989) that the context of Section 407 "clearly indicates that the 'amount to be paid' refers to 'compensation' in the same sentence, not to reimbursement of legal expense."

Compensation Appeal Board in the above captioned matter relating to attorneys' fees is affirmed and that portion of the Board's order limiting employer's subrogation credit to $300,000.00 is vacated. This case is remanded to the Board with instructions to reinstate the WCJ's order suspending payment of benefits without limitation.

Jurisdiction relinquished.