625 A.2d 187

George **PENDLETON**, Deceased, Elaine
Pendleton, Widow, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD
(CONGOLEUM CORP. and Liberty Mutual
Insurance Co.), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 1993.

Decided May 4, 1993.

Lee B. Balefsky, for petitioner.

Patricia A. Matern, for respondents.

Before CRAIG, President Judge, McGINLEY, J., and LORD, Senior Judge.

CRAIG, President Judge.

Claimant Elaine Pendleton, widow of deceased employee George Pendleton, appeals an order of the Pennsylvania Workmen's Compensation Appeal Board that affirmed a refer-

ee's decision concerning the subrogation rights of employer Congoleum Corporation and its insurer, Liberty Mutual Insurance Company (both referred to here as the· "employer"), under section 319 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671, based on a recovery the claimant obtained in settlement of a tort action against a third party alleged to be liable for the compensated injury.

## ISSUES

The first issue in this appeal is whether the referee erred by not exempting from subrogation that portion of the settlement amount which the claimant attributes to her loss-of-consortium claim rather than to her worker husband's ·injury damages.

The second question is whether the referee, in calculating the employer's subrogation rights and obligations, should have required *the employer's proportionate share of the legal fees and expenses attributable to obtaining the accrued lien amount* (for past compensation paid) *to be reimbursed to the claimant at the time that the employer receives the lump sum accrued lien payment of $129,975,* instead of allowing the employer to take *more than 27 years* to reimburse to claimant that $44,932 share of legal expense, in weekly installments of just $32 per week.

## ANALYSIS

### 1. Consortium Recovery As Part of Employer's Subrogation Rights

■ The claimant settled the third-party action for a total of $590,000. The claimant, on appeal, now contends that the referee and the board should have calculated the employer's subrogation rights by first deducting $100,000 from the $590,-000 settlement as attributable to the widow claimant's own personal loss of consortium, and therefore not available to the employer for subrogation.

However, the record here contains no evidence whatsoever to permit the compensation authorities or this court to attribute any portion of the settlement to consortium.

First, there has been no adjudication of any kind with respect to a consortium claim; the claimant has not sought any adjudication on that point.

Secondly, the claimant has not produced any agreement with the third-party tortfeasor concerning a consortium claim, nor any other evidence relating to such a contention.

The only item in the record on the claimant's consortium claim is the unilateral declaration by the claimant's attorney in a letter to counsel for the employer's insurer, that "$100,000.00 of this settlement was allocated to Mrs. Pendleton's claim in her own right for loss of consortium." The use of the vague passive verb does not come close to establishing that any adjudication or any kind of agreement accomplished such an allocation.

Decisions of this court have held that, without an agreement between claimant and employer concerning a consortium claim amount and without any adjudication determining a consortium claim amount, there is no basis for excluding from subrogation an amount attributable to consortium. *Bell Telephone Company v. Workmen's Compensation Appeal Board (Artuch)*, 127 Pa.Commonwealth Ct. 569, 573, 562 A.2d 427, 429 (1989). To the same effect are *Warner Lambert Co. v. Workmen's Compensation Appeal Board (Brown)*, 133 Pa.Commonwealth Ct. 250, 256, 575 A.2d 956, 959 (1990) and *Dasconio v. Workmen's Compensation Appeal Board*, 126 Pa.Commonwealth Ct. 206, 559 A.2d 92 (1989).

Even if this court desired to reconsider the foregoing decisions, the record here provides no basis for doing so because the claimant has rested solely upon the claimant's own unsupported unilateral attempt to allocate part of the settlement to consortium in order to insulate it from subrogation.

Accordingly, this court affirms the board's conclusion that the subrogable amount of the total recovery cannot be reduced to reflect the claimant's loss-of-consortium claim.

## 2. *Calculation of Subrogation Amount*

Despite the clear language of section 319 of the Act and the growing number of examples in the decisions cited above, the parties here, as well as the compensation authorities continue to evidence confusion as to some straightforward mathematical rules.

We begin with the statute. Section 319 first states that "the employer shall be subrogated" to the employee's right against the third-party tort defendant "to the extent of the compensation payable ... by the employer."

The section then adds that "reasonable ... fees and other proper disbursements incurred in obtaining a recovery or ... settlement shall be pro-rated" between the employer and employee.

■ Those rules must first be applied to the "accrued lien," the compensation previously paid by the employer up to the time of the recovery from the third party. As to that, section 319 next states:

> "The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation *paid* or payable *at the time of recovery or settlement* bears to the total recovery or settlement." (Emphasis added.)

Thus, when a recovery from a third party provides the employer with repayment of the past compensation benefits given, the employer must bear its proportionate share of the legal fees and costs expended to provide that reimbursement to the employer. To obtain the recovery, the claimant has become obligated for such expenses and, of course, should not be left bearing those costs to the extent they benefit the employer.

Indeed, as we know, in most cases the tort attorney will have been entitled to retain the legal fees and costs as soon as the settlement or judgment amount is paid. Normally, only the net amount remaining will be actually available for the claimant and subrogation.

Thus, section 319 indicates that the employer should bear its fair share of the legal expense at the same time that it gets its lump sum liquidation of its accrued lien.

 Next, the statute turns to the disposition of any balance of recovery remaining. It provides that the employer may also benefit further, if the third-party recovery is large enough to provide additional funds to satisfy all or part of the *future* compensation obligation of the employer. Those additional funds can provide the employer with the "grace period" in the future, the span of time during which the employer's compensation obligation is pre-paid and hence satisfied thereby. Section 319 so provides by stating:

> Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employee ... or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.

Of course, under the forepart of section 319, stated above, in return for conferring the benefit of that future grace period, the statute still requires that the "proper disbursements incurred ... shall be pro-rated between the employer and employee" or dependents.

The simplest and fairest way, for both sides, is for the employer, in connection with each week of the grace period, to reimburse the claimant, in cash, the amount of costs attributable to that week of compensation (grace period). Thus the employer is not required to reimburse any amount of the grace period expense until the grace period week, achieved by the expenditure attributable to that week, has arrived.

Here the compensation authorities went astray because, inexplicably, they did not follow their own helpful bureau form, which has been demonstrated to be an extremely helpful tool in several cases, including *Dasconio, Bell Telephone* and others.

### The Statute Applied To The Figures Here

There is no dispute concerning the dollar amounts involved in this case, which below are rounded off for clarity and convenience of computation.

Matched against the statutory terms in section 319 (which terms are set out within quotation marks below), those figures are:

| | |
|---|---|
| Total "recovery" by way of "settlement" | $590,000.00 = R |
| "Attorney's Fees and other proper "disbursements" | 204,236.00 = c |
| Accrued lien—"compensation paid" previously | 129,975.00 = p |
| Weekly compensation amount i.e., "future installments of compensation" | 178.50 = w |

We have above appended the letter designations which the Supreme Court established in *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Maas)*, 506 Pa. 592, 487 A.2d 794 (1985), to identify the specific factors.

With no amount here to be excluded as consortium, the above figures are all that are needed for resolution of the questions in this case.

Section 319 directs that "fees and other proper disbursements" shall be pro-rated between employer and claimant. In applying the statute to the above figures, when p, the accrued lien amount of $129,975 is repaid to the employer, the employer must bear that proportion of the "fees and other proper disbursements" that the amount of compensation paid, p, "bears to the total ... settlement." Accordingly, the proportion of p/R must be determined in accordance with the statute as follows:

When p, $129,975 ÷ R, $590,000 is .22; i.e., the employer must contribute 22% of the $204,236 worth of expenses, giving $44,932 as the employer's share of those expenses attributable to the accrued lien.

With p, $129,975 (including the pertinent legal expense attributable to it) deducted from R, the $590,000 total recovery, a balance of recovery (Bal.R) $460,025 remains to be applied to "future installments" of compensation, by way of a grace period to be enjoyed by the employer. The grace period, g, is determined by having the Bal.R $460,025 ÷ w, the

weekly amount of $178.50, resulting in g being equal to 2577 weeks.

But dividing the $460,025 balance of recovery by R, $590,-000, shows that, being .78 of R, that balance of recovery (Bal.R) must bear 78% of the costs, c, $204,236, thus revealing that $159,304 is the amount of costs for the employer to repay during the 2577–week grace period. By dividing that $159,304 by 2577, the result is an amount of $61.82 to be paid each week by the employer to the claimant as reimbursement of costs over the grace period.

As noted above, the balance of recovery, $460,025, divided by the weekly compensation amount of $178.50, yields 2577 weeks of grace period, with the employer owing the claimant for expenses $61.80 per week for a total of $159,260 in expenses over the entire grace period.

Form LIBC–380 of the bureau itself, established by 34 Pa.Code § 121.18, conveniently serves to present the same computations. Below is the filled-in face of that form, followed by the instructions which appear on its reverse side.

| LIBC–380<br>REV 5 91 | **THIRD PARTY SETTLEMENT<br>AGREEMENT** | COMMONWEALTH OF PENNSYLVANIA<br>DEPARTMENT OF LABOR AND INDUSTRY<br>BUREAU OF WORKERS' COMPENSATION |
|---|---|---|
| | Pursuant to Section 319 of the<br>Pennsylvania Workmen's Compen-<br>sation Act | 1171 S. CAMERON STREET, ROOM 103<br>HARRISBURG, PA 17104–2501 |

EMPLOYEE George Pendleton

SOCIAL SECURITY NUMBER
☐☐☐–☐☐–☐☐☐☐

DATE OF INJURY _____ (month-day-year)

EMPLOYER Congoleum Corporation FILE _____ (employer)

W.C. CARRIER Liberty Mutual Insurance Co. FILE _____ (carrier)

IN ACCORDANCE WITH SECTION 319 OF THE PENNSYLVANIA WORKMEN'S COMPENSATION ACT, PARTIES HEREIN HAVE AGREED TO THE FOLLOWING DISTRIBUTION OF PROCEEDS RECEIVED FROM _____, THIRD PARTY:

**PART I**

Total Amount of Third Party Recovery...(R).. $ 590,000 (100%)

Less Total Workers' Compensation Lien...(p) − 129,975 (22% of Total 100%)

Balance of Recovery...(Bal. R)...............$ 460,025 (78% of Total 100%)

BALANCE OF RECOVERY shall constitute fund for credit against future workers' compensation payable, subject to reimbursement to Claimant of expenses of recovery at the rate of ___78___ % on credit used.

## DISTRIBUTION OF PROCEEDS

**PART II**

**A. EXPENSES OF RECOVERY**

Attorney fees...................... $ 191,133

Other Expenses (if any) + 13,103

Total Expenses...(c)................................... $ 204,236

**B. WORKERS' COMPENSATION LIEN**

Compensation ...................... $ 129,975

Medical _____

Total Lien...(p)................ $ 129,975

Less Pro Rata Share of Expenses of
Recovery − 44,932 (22% of Total expenses, c)

Net Recovery of Workers' Compensation Lien ............. $ 85,043

**C. EMPLOYEE**

Expenses of Recovery...of
$460,025 Bal.R ............... $ 159,304 (78% of Expenses)

Grace Period (weeks)...Bal.R
÷ $178.50 w................. 2,577 (g)

(Cash) Recovery to Claimant (per week)........................ $ 61.82

---

EMPLOYEE'S SIGNATURE | WORKERS' COMPENSATION CARRIER (OR EMPLOYER)

EMPLOYEE'S ATTORNEY | BUREAU CODE _____
CARRIER'S ATTORNEY'S SIGNATURE
by _____

DATE OF AGREEMENT _____ | NAME (TYPED OR PRINTED)

(SEE INSTRUCTIONS ON OTHER SIDE)

## INSTRUCTIONS

**PART I**

1) Total Amount of Third Party Recovery is the gross amount recovered.

2) Total Workers' Compensation Lien is the gross amount of compensation and medical payments made to the employee to date.

3) Balance of Recovery is the gross recovery minus the workers' compensation lien.

4) The rate of reimbursement to the employee of expenses of recovery is determined by dividing the workers' compensation lien by the gross recovery.

**PART II**

A. 5) Attorney Fees are the total amount paid by the employee in attorney fees to obtain recovery.

B. 6) The Workers' Compensation Lienholder's Pro Rata Share of Expenses of Recovery is determined by dividing the total workers' compensation lien by the gross recovery. This percentage is then multiplied by the total amount of expenses of recovery to give the workers' compensation lienholder's pro rata share of the expenses of recovery.

C. 7) The Expenses of Recovery is the balance that remains once the workers' compensation lienholder's share of expenses is deducted from the total expenses of recovery.

8) The Grace Period is determined by dividing the balance of recovery by the employee's compensation rate.

9) The employee will recover the expenses of recovery over the grace period. The amount to be paid to the employee is determined by dividing the balance of expenses (*after deducting the workers' compensation lienholder's share*) by the number of weeks in the grace period. This is the amount that the employee will receive per week during the grace period.

## Referee's and Board's Decisions

The foregoing computation, as made by this opinion in accordance with the statute and the bureau's longstanding application of it under the department's regulations, differs from the computation made by the referee and the board, which the claimant has here challenged on appeal.

In this case, because the claimant has preserved for appeal the statutory claim to be reimbursed for the legal expense attributable to the accrued lien *at the time the employer gets its actual repayment,* we must deal with that issue, which was *not* raised by the claimants in the *Rollins* and *Dasconio* cases.

Because the claimants in those two cases were content (1) to let the employer take the *gross* repayment of the accrued lien without any deduction for the legal expense of obtaining it, the Supreme Court in *Rollins* and this court in *Dasconio* had no choice except to deduct *all* of the legal expense—as well as *all* of the accrued lien—before determining the balance of recovery for the grace period, thus arriving at a grace period reduced in length by subtracting all of the legal expense first. In *Dasconio,* we recognized this approach as the *net* method.

In this case, the referee and the board calculated the employer's subrogation rights in accordance with that method as follows:

| | |
|---|---|
| Total recovery: | $590,000 |
| Less all costs: | − 204,236 |
| Net recovery: | = 385,764 |
| Less accrued lien: | − 129,975 |
| Future credit: | = 255,789 |

Thus, the compensation authorities computed the grace period by dividing the above future credit by the $178.50 weekly payment to arrive at a grace period of 1433 weeks, instead of

2577. Of course, the reduced number of weeks resulted from subtracting all of the costs, rather than just those attributable to the accrued lien.

To determine the amount the employer would be required to pay the claimant for each week of the grace period to reimburse the claimant for the legal costs attributable to the *accrued lien* (ignoring the more relevant cost attributable to the grace period weeks), the referee followed the net method to determine the employer's share of those costs in this manner:

The referee divided the accrued lien, p, of $129,975 by the total recovery of $590,000 to arrive at an employer's share of .220296 or 22.0296%, as we have done here.

To determine the dollar amount the employer owes the claimant for those costs, the referee then applied the 22.0296% proportion to the total expenses of $204,236 to arrive at an expense amount of $44,992.40 for the accrued lien expenses, the difference from the foregoing computation being a result of rounding.

The referee then divided that amount by the number of weeks in the grace period, 1433, for a result of $31.40 per week, the cost reimbursement to be paid weekly by the employer to the claimant.

■ Thus the compensation authorities failed to implement the rational claim of the claimant, that the *legal expenses attributable to the accrued lien* should be applied at the time of repayment of the *accrued lien* itself, not deferred over the grace period, to which those accrued lien expenses have no necessary relationship.

Note that this computation, by deducting *all* of the legal expenses before computing the grace period, and then having the employer repay weekly amounts ($31.40) during the grace period for the 22% of expenses attributable to the *accrued lien* (rather than to the grace period) arguably subjects the employer to a double payment of legal expense—once when all the expenses are deducted to reduce the grace period and

then again, in cash payments charged against the employer during the shortened grace period.

The claimant's claim for reimbursement of the accrued lien legal expense at the time of repayment to the employer of the accrued lien, with reimbursement of the grace period legal expense to follow during the grace period, actually works out more fairly to both parties.

The claimant does not have to wait for reimbursement of the accrued lien legal expense over a long period of years. On the other hand, the employer gets a grace period of 49 years instead of 27 years, with an obligation to reimburse expenses only in lockstep with the employer's receipt of the grace period benefit. *Dasconio,* 126 Pa.Commonwealth Ct. at 225, 226, 559 A.2d at 102, with reference to William J. McKee's article *Workers' Compensation,* XII Pa. Law Journal–Reporter, No. 12, pp. 3, 4.

## CONCLUSION

Accordingly, the computation method which the claimant has here explicitly sought, by preserving that issue for appeal, is in accordance with section 319 of the statute, and this court must remand for a recomputation and distribution accordingly.[1]

## ORDER

NOW, May 4, 1993, the decision of the Workmen's Compensation Appeal Board, dated July 24, 1992, No. A 91–1624, is

1. Claimant's brief reached approximately the same result as here, albeit by computing the proportion expenses differently. Instead of determining the relative proportion of accrued lien (22%) and balance-of-recovery grace period costs (78%) by dividing each of those elements by the total recovery, the claimant simply noted that the total expenses of $204,236 divided by the total recovery of $590,000 resulted in an expense-to-recovery percentage of 34.62%, i.e., 34.62 cents of each dollar recovered has to be applied to pay legal expenses. The results are approximately the same as those at which this court arrives; the difference is only as a result of the greater distribution of rounding numbers in the claimant's computation.

vacated, and this case is remanded for the board to issue a modified order directing distribution as follows:

The claimant shall immediately pay a net amount of $85,043 to the employer in full repayment of the total accrued lien of $129,975 after deduction of $44,932, being the 22% of legal expenses attributable thereto. Thereafter, the employer shall have a grace period during which the present weekly payment amount of $178.50 need not be paid, consisting of 2577 weeks beginning with the week next following the period covered by the accrued lien. During each of those grace period weeks, the employer shall pay to the claimant in cash $61.82 to repay, over the entire grace period, the 78% of legal expense (in the amount of $159,304) attributable to the grace period.

Jurisdiction relinquished.