DARR CONSTRUCTION COMPANY and Rockwood Casualty Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (WALKER, R.), Respondent.

DARR CONSTRUCTION COMPANY and Rockwood Casualty Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (REED), Respondent.

DARR CONSTRUCTION COMPANY and Rockwood Casualty Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (WALKER, J.), Respondent.

DARR CONSTRUCTION COMPANY and Rockwood Casualty Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (RAYMAN), Respondent.

DARR CONSTRUCTION COMPANY and Rockwood Casualty Company, Petitioners,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (ZIEGLER), Respondent.

Donald ZIEGLER, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (DARR CONSTRUCTION COMPANY and Rockwood Casualty Company), Respondents.

Donald REED, Petitioner,

v.

WORKMEN'S COMPENSATION AP-
PEAL BOARD (DARR CONSTRUC-
TION COMPANY and Rockwood Casu-
alty Company), Respondents.

Richard WALKER, Petitioner,

v.

WORKMEN'S COMPENSATION AP-
PEAL BOARD (DARR CONSTRUC-
TION COMPANY and Rockwood Casu-
alty Company), Respondents.

James WALKER, Petitioner,

v.

WORKMEN'S COMPENSATION AP-
PEAL BOARD (DARR CONSTRUC-
TION COMPANY and Rockwood Casu-
alty Company), Respondents.

Neil RAYMAN, Petitioner,

v.

WORKMEN'S COMPENSATION AP-
PEAL BOARD (DARR CONSTRUC-
TION COMPANY and Rockwood Casu-
alty Company), Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1995.
Decided June 12, 1996.

Pamela G. Cochenour, for Petitioners, Darr Construction and Rockwood Casualty.

Vincent J. Barbera, for Respondents, Richard Walker, et al.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

PELLEGRINI, Judge.[1]

Darr Construction Company and its workers' compensation carrier, Rockwood Casualty Insurance Company (together, Employer), petition for review of five orders of the Workmen's Compensation Appeal Board (Board) which amended five separate referee decisions regarding Employer's subrogation interest in the civil settlements of Richard Walker, Donald Reed, James Walker, Neil Rayman and Donald Ziegler (collectively, Claimants). Claimants filed cross-petitions for review of the same Board orders.[2] All petitions were consolidated by this court.

### I.

The facts are not in dispute. Claimants were working for Employer on August 31, 1988, when an explosion occurred at the job site. As a result of the explosion, Claimants sustained work-related injuries for which they received benefits pursuant to notices of compensation payable. Claimants and their spouses[3] also commenced civil actions in the Court of Common Pleas of Somerset County against Peoples Natural Gas Company (Peoples), seeking to recover damages for Claimants' August 31, 1988 injuries. The actions also sought damages for loss of consortium. Ultimately, each Claimant settled his third-party action with Peoples. The spouses of the married Claimants also settled their loss of consortium claims and signed separate releases. Employer did not agree to the settlement amounts or the designation of the

---

1. This case was reassigned to the authoring judge on March 12, 1996.

2. Henry Hitechew also petitioned for review of the Board's order regarding Employer's subrogation interest in his civil settlement, and Employer cross-petitioned. However, these petitions were subsequently withdrawn.

3. With the exception of Richard Walker, all Claimants were married.

loss of consortium amount and apparently was not involved in the settlement negotiations.[4]

Employer subsequently filed review petitions, alleging that each Claimant had received a third-party settlement for the same injury for which he was receiving workers' compensation benefits. Employer further alleged that it was subrogated to each Claimant's recovery pursuant to Section 319 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671. Each Claimant filed an answer, admitting the settlement of the third-party action arising out of his work-related injury.

Before the respective referees hearing the cases, the parties entered into stipulations of fact. Specifically, the parties stipulated, *inter alia,* to the total amount of the third-party recovery; the amount of the consortium claim, if applicable; the total compensation lien at the time of settlement (including both indemnity payments and medical expenses); attorneys' fees; total expenses; weekly compensation rate; and date of return to work, if applicable. However, the parties were unable to agree on the amount or method of calculating Employer's subrogation interest.

Employer advocated application of the Net Method as set forth in *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Maas),* 506 Pa. 592, 487 A.2d 794 (1985). Claimants asserted that Employer's subrogation rights should be calculated by using the Gross Method contained in the Bureau of Workers' Compensation Form LIBC–380 and applied in *CNA Insurance Co. v. Workmen's Compensation Appeal Board (Romeo),* 134 Pa.Cmwlth. 478, 578 A.2d 1375 (1990).

Specifically, the parties could not agree regarding whether each Claimant was required to pay Employer its accrued compensation lien in full upon receipt of his civil settlement. Claimants advocated deducting Employer's pro-rata share of expenses from the sum owed to Employer and then paying Employer the net amount. Employer, however, asserted that the accrued compensation lien should be paid in full at the time of settlement, with Employer reimbursing each Claimant its pro-rata share of expenses over the grace period.

The parties also disputed the extent of pro-rata expenses owed by Employer under Section 319 of the Act. Claimants argued that Employer must pay its pro-rata share of the expenses of recovery attributable to the accrued compensation lien and, in addition, Employer's pro-rata share of the expenses associated with *future* compensation that Employer is relieved of paying by virtue of each Claimant's civil recovery. In contrast, Employer maintained that the Net Method levies a pro-rata share of expenses based solely upon the accrued compensation lien and, thus, relieves Employer of any obligation to pay a pro-rata share of expenses attributable to future benefits.

Finally, the married Claimants disagreed with Employer regarding whether Employer

**4.** For the various Claimants, the settlements were constructed as follows:

| Claimant | Total Third-party Recovery | Designated Loss of Consortium | Total Compensation Lien | Returned to work |
|---|---|---|---|---|
| Richard Walker | $172,500 | None | $58,611 | Yes, in 1991 |
| Donald Reed | $172,500 | $50,000 | $32,271 | Yes, in 1989 |
| James Walker | $750,000 | $150,000 | $161,528 | No |
| Neil Rayman | $600,000 | $100,000 | $88,128 | No |
| Donald Ziegler | $550,000 | $200,000 | $63,115 | No |

had a right of subrogation over their respective spouses' consortium settlements.

Upon consideration of the cases on the stipulations of fact, the referees concluded that Employer was entitled to calculate its subrogation rights under the Net Method. Therefore, Employer's pro-rata share of expenses was to be calculated solely upon its accrued compensation lien, and no additional reimbursement for expenses attributable to the future grace period was necessary.[5]

With respect to the consortium settlements between Peoples and the spouses of Reed and Ziegler, the referee concluded that, because the spouses executed separate releases and received separate payments from Peoples, they established a distinct and separate loss; thus, Employer had no right of subrogation over those consortium settlements. Regarding the consortium settlements between Peoples and the spouses of Walker and Rayman, a different referee concluded that because there was no jury verdict or court ruling concerning the claims, they were subject to Employer's right of subrogation.

Based upon the foregoing conclusions, the referees ordered each Claimant to pay immediately to Employer the gross amount of its accrued compensation lien and directed Employer to pay each Claimant its pro-rata share of expenses during the grace period until paid in full.[6] The referees also granted Employer a suspension for the duration of the grace periods.[7]

Claimants and Employer appealed to the Board, which, in each case, amended the referee's determination of Employer's subrogation interest. Specifically, the Board utilized the Gross Method and held that Claimants should have paid Employer the net amount of its accrued compensation lien, i.e., the compensation lien less allocated costs and fees. The Board calculated the expenses attributable to the accrued compensation lien by dividing the lien by the third-party recovery and then multiplying that percentage by the total costs of recovery.[8]

To calculate the grace period, the Board applied the following formula:

$$\frac{\text{Recovery—Compensation Lien}}{\text{Weekly Compensation Rate}}$$

The Board required Employer to reimburse Claimants during the grace period for its pro-rata share of the expenses attributable to the future compensation lien. It held that Employer was entitled to a credit for any medical expenses incurred by Claimants during the grace period, to the extent that the settlement exceeds the accrued lien less expenses attributable to the excess. The Board explained that as Employer receives a credit for the medical bills, the total credit allowed Employer will be equally reduced, thus reducing the grace period. The Board further indicated that Employer must reimburse Claimants a percentage of each medical bill representing Employer's pro-rata share of the recovery expenses.

■ The Board also ruled that the consortium settlements of Claimants' spouses were subject to Employer's right of subrogation. The Board stated that Employer cannot be forced to abide by an agreement solely between the Claimants and the third-party defendant in the civil action which merely divides settlement amounts between the Claimants and their spouses. Finally, the Board approved legal fees in those cases where the issue was raised. The parties

---

5. *Applying these principles, the referees calculated the grace period as follows:*

$$\frac{\text{Recovery—Expenses—Compensation Lien}}{\text{Weekly Compensation Rate}}$$

The referees then calculated Employer's pro-rata share of expenses using the following formula:

$$\frac{\text{Compensation Lien}}{\text{Recovery}} \times \text{Expenses}$$

6. In the case of James Walker, Claimant would not have received full reimbursement of Employer's pro-rata share until 892.53 weeks of the grace period had passed.

7. With the exception of the Ziegler order, the referees' orders did not address medical expenses incurred by each Claimant during the grace period. In addition, the Ziegler order was the only order to address the Claimants' legal fees.

8. The same result is achieved by dividing the costs of recovery by the total recovery and then multiplying that percentage by the accrued compensation lien.

appealed and cross-appealed from the Board's orders to this court.[9]

On appeal, the issues presented by the parties are whether the Board erred:

- in holding that Employer has a right of subrogation over the consortium settlements of Claimants' spouses;

- in requiring Employer to reimburse its prorata share of expenses attributable to the accrued compensation lien at the time Employer collected its lien;

- in requiring Employer to reimburse Claimants weekly during the grace period the amount of legal expenses attributable to that grace period week; and

- in its treatment of the medical expenses incurred by Claimants during the grace period.

## II.

### A. Recovery for Loss of Consortium and Employer's Subrogation Rights

 As argued by Claimants, the courts of this Commonwealth have long recognized the right of both husbands and wives to recover damages for loss of consortium stemming from a tortious physical injury to a spouse. *Dasconio v. Workmen's Compensation Appeal Board (Aeronca, Inc.)*, 126 Pa. Cmwlth. 206, 559 A.2d 92, 99 (1989).[10] Where such a claim is asserted, the losses alleged are personal to the uninjured spouse and arise from the deprivation of the injured spouse's society and services. *Id.* However, it is the claimant's burden to prove the amount of a settlement or award attributable to loss of consortium by having that issue determined in the third-party action. *Id.* 559 A.2d at 100.

The amount attributable to a loss of consortium must be decided in the third-party action because, as this court stated in *Dasconio:*

> [T]here is no authority or jurisdiction in the workmen's compensation system for determining the amount of a wife's consortium damages previously recovered in a common pleas proceeding. Such a determination is solely one for a jury in the common pleas proceeding; such common pleas issues are not cognizable by compensation authorities.
>
> . . .
>
> Thus, the claimant's failure to resolve this issue in the common pleas proceeding leaves him and his wife with a failed burden of proof with which we may not become involved.... Moreover, ... the workmen's compensation insurer, an interested party as subrogor, would be entitled to due process as to such a determination.

*Id.*

Similarly, in *Warner Lambert Company v. Workmen's Compensation Appeal Board,* 133 Pa.Cmwlth. 250, 575 A.2d 956, 959 (1990), we held that where there is no jury verdict or other cognizable ruling in the third-party matter fixing the amounts payable to a claimant and to the spouse, the full amount recovered is subrogable because there is no basis for the workers' compensation system to determine the appropriate share. We have also noted that an agreement between the claimant and the employer designating the amount recovered for the consortium claim could be recognized by the workers' compensation authorities. *Bell Telephone Company of Pennsylvania v. Workmen's Compensation Appeal Board,* 127 Pa.Cmwlth. 569, 562 A.2d 427, 429 (1989).[11]

---

**9.** Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 132 Pa. Cmwlth. 277, 572 A.2d 838 (1990), *affirmed,* 531 Pa. 287, 612 A.2d 434 (1992).

**10.** *See also Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974) (holding that because a husband had a right to recover for loss of consortium as a result of a tortious injury to his wife, the Equal

Rights Amendment to the Pennsylvania Constitution, Pa. Const. Art. I, § 28, requires that a wife be allowed to recover for such a loss as well).

**11.** Again, in *Pendleton v. Workmen's Compensation Appeal Board (Congoleum Corp.),* 155 Pa. Cmwlth. 440, 625 A.2d 187, 189 (1993), we refused to reduce the subrogable amount to reflect a loss of consortium because there was nothing in the record on which to base such a determination, citing the holdings in *Dasconio, Bell Telephone* and *Warner Lambert,* that without an agreement between the claimant and employer

■ In this case, there was no adjudication of any of the issues in the tort action against Peoples and there was no agreement between the Claimants and Employer designating an amount for loss of consortium recovery. Because, as stated in *Dasconio,* the Employer or its insurer has an interest as subrogor, the agreement between the Claimants and Peoples cannot be recognized by the workers' compensation authorities to limit the Employer's right to subrogation.[12] For such settlements to be given a limiting effect on subrogation, the Employer or its insurer must have been given, at the very least, an opportunity to be involved in the negotiations and allocation of the loss of consortium recovery. *Warner Lambert; Bell Telephone; Dasconio.* Because there was simply an agreement between the Claimants and Peoples, without an adjudication by an impartial factfinder nor any concurrence by Employer in the allocation of the loss of consortium recovery, there was no cognizable determination of the consortium amount that could be relied on by the workers' compensation authorities for exclusion from the Employer's right to subrogation. Accordingly, we affirm the Board's determination that the entire settlement amount is subject to Employer's right of subrogation.[13]

### B. Apportioning the Expenses on the Accrued Compensation Lien

■ Employer contends that the Board erred in requiring it to reimburse its pro-rata share of the expenses attributable to the accrued compensation lien at the time it collects its accrued lien. An employer's right of subrogation and responsibility for expenses is set forth in Section 319 of the Act, which provides in pertinent part:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe.... The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement.

77 P.S. § 671.

■ Employer asserts that the Board erred in applying the Gross Method to calculate its subrogation interest because this method, contained in the Bureau's Form LIBC–380 and utilized by this court in numerous decisions,[14] is inconsistent with the statutory requirements and language of Section 319 of the Act. We disagree.

or any adjudication on the consortium amount, there can be no exclusion from subrogation.

This view of the proof required for a loss of consortium recovery to be excluded from workers' compensation subrogation is supported by decisions in other states. *See Shimabuku v. Montgomery Elevator Company,* 79 Hawaii 352, 903 P.2d 48 (1995) (a loss of consortium claim will be given legal effect only when fully and fairly determined by an impartial trier of fact or where the employer or insurer participated in the settlement negotiations); *Henning v. Wineman,* 306 N.W.2d 550 (Minn.1981) (a consortium settlement is not recoverable so long as the employer was notified of negotiations leading to such a settlement so that it could choose to intervene to protect its interest); *Dearing v. Perry,* 499 N.E.2d 268 (Ind.App.1986) (a claim for loss of consortium will be given legal effect only when fully and fairly determined by an impartial trier of fact or where the insurance carrier has the opportunity to participate in the settlement negotiations).

12. Although the opinion in *Pendleton* mentions in dicta that in that case, there was only a unilateral assertion by the claimant without even an agreement between the claimant and the third-party tortfeasor about a loss of consortium recovery, it was not a determination that the workers' compensation authorities could recognize an agreement between the claimant and a third party without the involvement of the employer or its insurer.

13. We urge the legislature to address the issue by removing the need for judicial approval to more fairly allow the apportionment of loss of consortium claims, perhaps by declaring that a certain percentage of a total third-party settlement will be allocated to loss of consortium for married claimants.

14. *See Pendleton; CNA Insurance Co.; Bell Telephone Co.*

Contrary to Employer's argument, the statute provides that when a claimant reimburses an employer from a third-party recovery or settlement the amount of compensation that the employer has paid to the claimant, the employer must bear its proportionate share of the legal fees and costs expended by the claimant to repay the employer. Because the claimant necessarily incurred certain expenses in obtaining the recovery or settlement, to the extent that the employer benefits from the third-party recovery or settlement, the claimant should not be required to bear the burden of the associated costs.

As recognized by this court in *Pendleton:*

[I]n most cases the tort attorney will have been entitled to retain the legal fees and costs as soon as the settlement or judgment amount is paid. Normally, only the net amount remaining will be actually available for the claimant and subrogation.

625 A.2d at 190. It logically follows that an employer should bear its fair share of the legal expenses *at the same time* that it receives payment of its accrued compensation lien. *See Allegheny Beverage Corporation v. Workmen's Compensation Appeal Board (Wolfe)*, 166 Pa.Cmwlth. 646, 646 A.2d 762, 764, 768 (1994) (in traditional subrogation cases, the among of the employer's lien is reduced proportionately by the attorney's fees and costs incurred in obtaining the settlement).[15]

We acknowledge that this result is contrary to that reached by *Rollins,* where our Supreme Court, utilizing the Net Method, directed a claimant to pay the employer the gross amount of its accrued compensation lien and ordered the employer to reimburse the claimant its share of expenses in weekly installments over the grace period. We note, however, that the claimant in *Rollins* did not assert and, therefore, did not preserve a claim to be reimbursed for the expenses attributable to employer's accrued lien *at the time the employer received its actual repayment.*

---

**15.** In *Allegheny Beverage,* the traditional subrogation method could not be applied in its entirety because, unlike in these cases, the claimant would receive monthly settlement payments for the rest of his life, resulting in the fact that the

As recognized by this court in *Pendleton,* the claimant in *Rollins* was content to allow the employer to take the gross repayment of its accrued lien without any deduction for the legal expense of obtaining it. As such, the Supreme Court "had no choice except to deduct *all* of the legal expenses—as well as *all* of the accrued lien—before determining the balance of recovery for the grace period...." *Pendleton,* 625 A.2d at 193 (emphasis in original). *See also USX Corp. v. Workmen's Compensation Appeal Board (Backos),* 147 Pa.Cmwlth. 59, 606 A.2d 1259, *petition for allowance of appeal denied,* 533 Pa. 603, 617 A.2d 1276 (1992) (because the employer did not preserve the right to pursue use of the gross method, the court was constrained to review the application of the net method as used by the referee and the Board); *Baus v. Workmen's Compensation Appeal Board (Nelson Co.),* 137 Pa.Cmwlth. 121, 585 A.2d 573 (1991) (where the claimant did not preserve any claim seeking to apply the gross recovery approach, the court did not consider the gross method); *Dasconio* (because neither the claimant nor the employer preserved any issue concerning methodology, the court could not consider possible advantages of the bureau method).

Because Claimants (like the claimant in *Pendleton* ) preserved for appeal their statutory claim to be reimbursed for the expenses attributable to the accrued compensation lien at the time that Employer received its repayment, the Board did not err in so directing the parties.

### C. Necessity of Future Compensation Payments

■ Employer contends that the Board erred in requiring it to reimburse Claimants weekly during the grace period the amount of legal expenses attributable to that grace period week. Section 319 of the Act addresses the disposition of any balance that may remain after a claimant repays his employer

---

employer would never receive the benefit of the full settlement, and the full value of the settlement could not be known forcing the court to rely on the minimum guaranteed payout of the settlement. *Id.* 646 A.2d at 767.

the amount of its accrued compensation lien as follows:

> Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future installments of compensation.

77 P.S. § 671.

This sentence of Section 319 must be read in conjunction with a prior sentence requiring "reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or ... settlement shall be pro-rated between the employer and employe." [16] Because an employer continues to benefit from the third-party action in those cases where the recovery is large enough to satisfy all or part of the employer's future compensation obligation, it naturally follows that attendant with this benefit is an employer's obligation to pay its share of expenses attributable thereto.

Even though Employer concedes it must pay a portion of the expenses of recovery, it maintains that it should be given the benefit of the Net Method which, it asserts, would charge it for a smaller share of expenses. Employer argues that because the Board applied the Gross Method in computing its subrogation rights, it was improperly charged with more than its pro-rata shares of the expenses incurred in each Claimant's civil recoveries.

When the Net Method is used to calculate the grace period as to future compensation, an employer receives a shorter grace period, but correspondingly, has no obligation to weekly reimburse legal expenses attributable to the third-party recovery amount that makes the grace period possible. *Baus*.[17] The Board determined that the Gross Method was more appropriate, however, resulting in a longer grace period but requiring Employer to reimburse Claimants during the grace period its pro-rata share of the expenses attributable to the future compensation lien.[18] The Gross Method provides, consistent with the statute, that an employer reimburse the employee for the expenses attributable to the benefit it receives—each grace period week. In addition to complying with the statutory requirement for reimbursement of the expenses attributable to the grace period, as recognized by this court in *Dasconio*, the true genius of this method is that:

> it takes account of that most elusive factor in our calculations, the time-value of money. By paying the claimant each week a proportional share of fees and costs, the value, although not the actual amount, of the payments decreases over time in lock step with the depletion in the value of the employer's credit.

559 A.2d at 102 quoting William J. McKee, *Workers' Compensation*, XII Pa. Law Journal–Reporter, No. 12, pp. 3, 4. Therefore, we conclude that the Board's application of the Gross Method in these cases was not in error.[19]

**16.** Sections 1922 and 1932 of the Statutory Construction Act, 1 Pa.C.S. §§ 1922 and 1932, require that all parts of the statute be effective and should be read *in pari materia*.

**17.** We note that the Net Method and *not* the Gross Method "arguably subjects the employer to a double payment of legal expense—once when all the expenses are deducted to reduce the grace period and then again, in cash payments charged against the employer during the shortened grace period." *Pendleton*, 625 A.2d at 193.

**18.** Although the Board applied the Gross Method when computing the grace period in the James Walker case, the Board failed to order Employer to reimburse Claimant weekly during the grace period the amount of legal expenses attributable to that grace period week. Therefore, the Board's order must be amended to correct this apparent oversight.

**19.** Employer argues that it is possible it would have to pay all of the expenses incurred in the third-party settlement and that this was not intended by the Act. Because Employer would only pay all of the expenses incurred in the third-party settlement if it receives all of the benefit of that settlement, that is, if the claimant continues to be disabled after exhausting the grace period, we disagree. In that case, the expenses are prorated as required in the Act because the employer has received the benefit of the entire third-party recovery and the employee has received no funds not subject to subrogation. In addition, this court rejects Employer's argument that the workers' compensation authorities are required to use the method preferred by an employer. We

### D. Reimbursement of Medical Expenses Incurred by Claimants During Grace Periods

█ Employer also contends that the Board erred in its treatment of medical expenses incurred by Claimants during the grace period. Addressing medical expenses during the grace period in *Dasconio*, we stated:

> [i]n considering general methods for handling future medical expenses (in as-yet-undetermined amounts) in these cases, there can either be a requirement (1) that the employer pay medical expenses, as they arise, by making additional cash payments to the claimant, or (2) that any newly arising medical expenses be charged against the employer's grace period credit, with the necessary result of reducing the number of weeks of the grace period.

559 A.2d at 104.

In these cases, the Board opted for the second approach. Specifically, the Board charged each Claimants' future medical expenses against Employer's grace period credit, thus reducing the number of weeks in each grace period. The Board then, pursuant to the Gross Method, required Employer to reimburse Claimants a percentage of each medical bill representing Employer's pro-rata share of the expenses incurred by Claimants to create that part of the grace period.

While Claimants acknowledge that this approach is consistent with the Board's treatment of pre-settlement medical expenses and the Board's use of the Gross Method for defining and calculating the grace period, they nonetheless submit that the preferred method is the first alternative, that the employer pay the medical expenses as they arrive.[20] We recognize that paying medical bills as they arrive may be preferable and simpler to the Employer because the number of weeks in the grace period would remain constant. However, because both methods have been approved by this court, we cannot conclude that the Board erred in requiring that newly arising medical bills be charged against Employer's grace period, particularly where it is consistent with the Board's previous use of the Gross Method.[21]

## III.

Based upon the foregoing discussion, we conclude that the Board did not err (1) in concluding that the Employer has a right of subrogation over the "consortium settlements" of Claimants' spouses, (2) in requir-

---

believe that the authorities should continue to strive for the result that is most fair to both parties.

We note that Employer also asserts that the Gross Method is an invalid means of calculating its subrogation interest because Bureau Form LIBC–380, which gives rise to the method, was adopted in violation of the "Commonwealth Documents Law," Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1201—1208. However, given our conclusion that the Gross Method is consistent with the statutory language of Section 319, we need not address this issue.

**20.** In Claimants' brief, the argument section pertaining to this issue is entitled, "The Board erred in requiring Employer to only pay a percentage of each medical expense incurred by the Claimants during the grace period while the Employer should be required to pay all of each medical expense." Claimants, however, do not fully develop this argument.

Our review of the Board's decision reveals that the Board indicated that the *entire* amount of each Claimants' future medical expenses was to be charged against Employer's grace period credit. In addition, the Board properly directed Employer to reimburse Claimants a percentage of each medical bill representing Employer's pro-rata share of the recovery expenses. Therefore, we conclude that Claimants' argument lacks merit.

**21.** Employer also asserts that because there were no medical bills in dispute, the issue was not properly before the Board. We disagree. In order for the Board to define completely the relationship between Employer and Claimants after the third-party settlement, it was necessary that it resolve the treatment of post-settlement medical expenses.

Finally, Employer argues that a claimant should assume sole responsibility for the payment of his medical bills because these bills were, in part, the basis for his civil action. According to Employer, a compensation insurer should not be required to pay for any percentage of the third-party tortfeasor's negligence until the recovery is exhausted. Because Employer receives a benefit from excess third-party recovery in relation to medical bills, as well as in relation to weekly compensation benefits, it cannot complain that the medical bill amounts are charged against its grace period.

ing Employer to reimburse each Claimant its pro-rata share of expenses attributable to the accrued compensation lien at the time Employer collected its lien, (3) in requiring Employer to reimburse each Claimant weekly during the grace period the amount of legal expenses attributable to that grace period week, and (4) in its treatment of the medical expenses incurred by Claimants during the grace period. Accordingly, we affirm.

### ORDER

AND NOW, this 12th day of June, 1996, in the cases of Donald Reed, Neil Rayman, Richard Walker, and Donald Ziegler, we affirm the order of the Workmen's Compensation Appeal Board.

In the case of James Walker, we remand the case to the Board so that it may amend its order to direct Employer to reimburse Claimant weekly during the grace period the amount of legal expenses attributable to that grace period week. With respect to all other matters in that case, we affirm. Jurisdiction relinquished.

McGINLEY, J., did not participate in the decision of this case.

KELLEY, Judge, concurring.

I join in all issues disposed of by the majority except the issue of subrogation of consortium.

Workers' compensation is a remedy in lieu of all common law rights of an employee to sue an employer for a work place injury.

Consortium is a common law right which is solely derivative of the injured spouse's claim. While our Supreme Court has stated that a claim for loss of consortium is a separate and distinct claim, the Court did not negate the fact that a claim for loss of consortium *stems* from the spouse's bodily injury. *Anchorstar v. Mack Trucks, Inc.*, 533 Pa. 177, 620 A.2d 1120 (1993).

Since it is derivative, the consortium proceeds should necessarily be subject to the claim of the subrogation. As such, third-

party claim proceeds should be entirely subject to subrogation to the worker's compensation benefits. We should hold true to the historical foundations of the legal doctrines with which we deal. Verdict and court agreements should not undermine the inherent dependence of consortium or exemplary damages upon the spouse's claims for compensatory damages. Without a worker's bodily injury, there would be no separate claim for loss of consortium by the spouse.

I would hold that as a matter of law all third-party claim receipts, including the separate claim for loss of consortium arising out of a spouse/worker's injury, be subject to subrogation.

FRIEDMAN, Judge, concurring and dissenting.

I concur with Parts IIB, IIC and IID of the majority opinion. However, because I believe that the loss of consortium damages here, as established by settlement agreements between Peoples Natural Gas Company (Peoples) and the spouses, are not subject to Darr Construction Company's (Employer) right of subrogation, I respectfully dissent with respect to Part IIA of the majority opinion.

In its analysis, the majority ignores the basic concept of subrogation: the substitution of one person in the place of another with reference to a lawful claim, demand or right, such that he who is substituted succeeds to the rights of the other in relation to the claim and its rights or remedies. In other words, subrogation is the right to recoup money that one has paid to an individual pursuant to a claim after another has paid the person with respect to the same obligation. Black's Law Dictionary 1279 (5th ed.1979). Here, Employer never paid anything to the claimants or their spouses for loss of consortium; indeed, there is no assertion here that Employer has an obligation under the Workers' Compensation Act (Act),[1] or under any other law, to pay loss of consortium damages to any employee or spouse.

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4.

## I. The Act[2]

Section 319 of the Act, 77 P.S. § 671, which establishes an employer's right to subrogation, provides that, where an injury is caused in whole or in part by a third party, "the employer shall be subrogated to the right of the *employe, his personal representative, his estate or his dependents* against such third party." Thus, an employer's subrogation rights are derived from the rights of specific kinds of claimants. In this case, Employer asserts a subrogation right against the claimants' *spouses;* however, it is obvious to me that the spouses here are *not* "employees," "personal representatives," "estates," or "dependents."[3] Thus, Employer's subrogation rights do *not* arise in relation to the spouses' rights against Peoples.

Furthermore, an employer's subrogation rights cannot rise higher than a claimant's rights. Section 306 of the Act, 77 P.S. §§ 511–541, which is the schedule of compensation available under the Act, shows that a claimant may receive: (1) total "disability" benefits; (2) partial "disability" benefits; (3) specific loss benefits; (4) medical benefits; or (5) death benefits. It is obvious to me that loss of consortium benefits are *not* included in these categories. If a *claimant* has no right to consortium benefits under the Act, then a *spouse*, whose only rights under the Act are derived from the claimant's, has no right to consortium benefits under the Act. An *employer*, who stands in the claimant's shoes with respect to subrogation rights, is barefoot as well.

This view is supported by our supreme court's explanation of subrogation in *Anderson v. Borough of Greenville,* 442 Pa. 11, 273 A.2d 512 (1971):

[T]here is implicit in the doctrine of subrogation an equatability between the obli-

gation of the compensation payor and the obligation of the tortfeasor payor, so that the two funds are going to satisfy the same duty, liability or obligation to the same person.

*Id.* at 16, 273 A.2d at 515. Here, Employer is trying to recover "disability" compensation, i.e., *loss of wages* benefits, from the spouses' settlement with Peoples for *loss of consortium* damages. Quite clearly, there is *not* an equatability between Employer's obligation to pay "disability" compensation and Peoples' obligation to pay loss of consortium damages. Thus, following *Anderson,* Employer has *no* subrogation rights with respect to the spouses' settlement with Peoples for loss of consortium.

In sum, because Employer's only interest as a subrogor under section 319 of the Act is in the rights of "employees," "personal representatives," "estates," or "dependents," against third-party tortfeasors, and spouses here are none of those, Employer can have no claim against the spouses' settlement with Peoples. Moreover, because an employer's subrogation rights cannot be greater than the rights of a claimant under the Act, and because section 306 of the Act limits a claimant's award to total "disability" benefits, partial "disability" benefits, specific loss benefits, medical benefits and death benefits, Employer here can have no interest as a subrogor in the spouses' settlement for consortium damages.

## II. Relevant Case Law

I am not persuaded otherwise by the fact that, in *Dasconio v. Workmen's Compensation Appeal Board (Aeronca, Inc.),* 126 Pa. Cmwlth. 206, 559 A.2d 92 (1989), this court stated that an employer would be an interested party as a subrogor in a third-party tortfeasor action at the common pleas level. (Majority op. at 1306.)

---

**2.** Although the majority fails to cite *any* provision of the Act in its analysis of this issue, I believe that the Act itself is the proper starting point for determining the extent of an employer's subrogation rights *under the Act.*

**3.** Our supreme court has stated that, in section 319 of the Act, the term "dependents" refers to persons entitled to compensation under the Act, *Anderson v. Borough of Greenville,* 442 Pa. 11, 273 A.2d 512 (1971); spouses are not entitled to compensation under the Act as "dependents"

unless the employees are deceased, which is *not* the case here. *See* Section 307 of the Act, 77 P.S. § 561.

Moreover, I note that, in a civil action for loss of consortium, a spouse is not entitled to consortium damages after the marital partner has died. *See* 21 Standard Pennsylvania Practice 2d § 116:41 (1995). Thus, if the employees here had died, their spouses would not have even had a civil cause of action against Peoples for loss of consortium.

In *Dasconio*, the claimant and his wife instituted a civil action, which included a cause of action for loss of consortium, *inter alia*, against a third-party tortfeasor and, unlike here, accepted a lump sum payment in settlement of the entire matter. That single lump sum payment necessarily included an amount for "disability" compensation as well as compensation for loss of consortium. Because the employer had an interest as a subrogor in the "disability" component of the lump sum payment, and because the workers' compensation system lacks jurisdiction to decide the amount attributable to consortium damages, we permitted the employer to assert its subrogation rights against the entire lump sum payment.

Here, there is no single lump sum payment; rather, having executed their own settlement agreements, the spouses received *separate* loss of consortium settlement checks. While Employer clearly has an interest as subrogor in the amount of the "disability" checks given to the claimants, Employer has *no interest as a subrogor* in the amount of the consortium payments made to the spouses.

I also believe that the majority's reliance upon *Dasconio* is misplaced with regard to the proposition that the spouses' consortium settlement agreements with People's do not constitute cognizable determinations of the consortium damages.[4] (Majority op. at 1307.)

In *Dasconio*, when faced with a single lump sum payment, this court pointed out that there is no authority or jurisdiction in the workers' compensation system for determining what portion of that single lump sum payment is attributable to loss of consortium damages. Quoting *Fidler v. Workmen's Compensation Appeal Board (United Cable Corp.)*, 83 Pa.Cmwlth. 155, 478 A.2d 907, 911

(1984), we then stated that claimants have to raise such issues in the trial court, or "as a part of . . . a third-party settlement." *Dasconio*, 559 A.2d at 100.

Thus, when we subsequently explained in *Dasconio* that a claimant's failure to resolve the loss of consortium issue in the common pleas proceeding leaves the claimant with a failed burden of proof, (Majority op. at 1306), we were *not* saying that evidence of a third-party consortium settlement, like those here, failed to satisfy a claimant's burden of proof. In fact, I believe that, if there had been a third-party consortium settlement in *Dasconio*, instead of the single lump sum payment, this court would have reached a different result. Indeed, since *Dasconio*, this court has recognized that a consortium settlement agreement between a spouse and a third-party tortfeasor would be sufficient to establish the amount attributable to loss of consortium. *See Pendleton v. Workmen's Compensation Appeal Board (Congoleum Corp.)*, 155 Pa.Cmwlth. 440, 625 A.2d 187, 189 (1993).

### III. Conclusion

It is indisputable that, under the Act, an employer can never assert subrogation rights with respect to spouses who are not "dependents" or with respect to consortium damages. Furthermore, this court has recognized that third-party settlement agreements are sufficient to establish the amount of consortium damages in an action. Accordingly, I would reverse the Workmen's Compensation Appeal Board's determination that the entire settlement amount in this case is subject to Employer's right of subrogation.

SMITH, J., joins in this concurring and dissenting opinion.

---

4. Evidently, the majority believes that people will abuse the system if this court permits settlement agreements between spouses and third-party tortfeasors to suffice as evidence of the amount of consortium damages in a civil action. For example, one might argue that the parties could agree to a $100,000 total settlement, with $80,000 attributable to consortium damages and only $20,000 attributable to disability.

However, if an employer believes that a particular settlement agreement is an attempt to defraud the employer of its subrogation rights, then the employer has recourse in the court of common pleas. Furthermore, the legislature can easily remedy this concern by amending the Act to require the employer's participation in the settlement of any civil action against a third-party tortfeasor which involves the employer's subrogation rights under the Act.